ASA GUILFORD *vs.* MINNEAPOLIS, S. STE. M. & A. RY. Co. *et al.*

Decided July 28, 1891. On rehearing, March 9, 1892.

**Bond Rendered Nonnegotiable by a Reference to Mortgage Securing it.**—(Overruled on reargument.) Where a series of railway mortgage bonds secured by a trust deed covering the road, property, and franchises of a railway company is issued, and reference is made to such trust deed on the face of the bonds, holders of such bonds, and the coupons attached to the same, are put upon inquiry by the recitals in the bonds, and charged with notice of the terms of such trust deed, and are bound by the conditions therein.

**Bondholders—Contract Relations Between.**—Each bondholder is brought into contract relations with his cobondholders, and his absolute rights in respect to the procedure for the collection of the principal or interest are limited by the provisions of the trust deed, and the peculiar nature of the security.

**Mortgage—Terms of, Construed.**—Where, by the terms of a trust deed, it was expressly agreed that all bonds should be taken and held by the purchasers subject to the condition that no proceedings, at law or in equity, should be had to enforce the collection thereof, except after a requisition should have been made to the trustee in manner and form as provided in such trust deed, and until after his refusal or unreasonable neglect to proceed as thereby required, *held*, that such provision was valid

and binding upon all the bondholders, and a compliance therewith a condition precedent to an action at law by a bondholder to recover upon a coupon attached to one of the bonds.

ON REHEARING.

March 9, 1892.

Bond Stating it is Secured by Mortgage is Negotiable.—A mere general recital in a bond issued by a railway company, negotiable on its face, that such bond belongs to a series of bonds secured by a trust deed of the property of the company, whose absolute obligation it purports to be, *held* not sufficient to destroy its negotiability, or to put the *bona fide* holder upon inquiry as to the existence of conditions in the deed qualifying the terms of the bond, or affecting his right to maintain a suit at law thereon, upon default in the payment thereof when due.

Appeal by plaintiff, Asa Guilford, from a judgment of the municipal court of the city of Minneapolis, *Mahoney,* J., rendered March 5, 1891, adjudging that plaintiff take nothing by this action.

The action was to recover $25 upon a coupon for six months' interest on a bond for $1,000, issued by the defendant, the Minneapolis, Sault Ste. Marie & Atlantic Railway Company. The contention of the defendant was that the bond was secured by a mortgage, and that, by recitals in the bond, the provisions of the mortgage were imported into it, and that those provisions prohibited a suit at law on the bond against the railroad company to recover the debt or interest. Defendant contended that the only method of enforcing payment was by taking possession, foreclosure and sale of the property mortgaged. The bond, indorsement, coupon, and these provisions in the mortgage were as follows:

BOND.

UNITED STATES OF AMERICA.

No.                    1,000.                    No. 4,028.

*The Minneapolis, Sault Ste. Marie and Atlantic Railway Company.*

First Mortgage Bond.

Know all men by these presents, that the Minneapolis, Sault Ste. Marie and Atlantic Railway Company is indebted to the Central

v.48M.—36

Trust Company of New York, or bearer, in the sum of one thousand dollars, lawful money of the United States of America; which indebtedness it promises to pay, in United States gold coin of the present standard, to the Central Trust Company of New York, or to the bearer hereof, on the first day of January, A. D. one thousand nine hundred and twenty-six, at the office or agency of said railway company, in the city of New York, with interest thereon in the mean time, in like gold coin, at the rate of five per centum per annum, payable semiannually, on the first days of January and July of each year, at said office or agency, upon presentation and surrender of the annexed coupons as they severally fall due.

The payment of each and all of the bonds of said series, together with the interest thereon, without reference to the time when said bonds shall be actually issued, is secured by a mortgage or deed of trust, bearing date on the first day of January, in the year one thousand eight hundred and eighty-six, duly executed by the Minneapolis, Sault Ste. Marie and Atlantic Railway Company, the Minneapolis and St. Croix Railway Company, and the Menominee and Sault Ste. Marie Railway Company, to the Central Trust Company of New York, trustee, conveying the railways of said companies, extending from Minneapolis and St. Paul, through the states of Minnesota, Wisconsin, and Michigan, to Sault Ste. Marie, and the boundary line between Michigan and Canada, constructed and to be constructed, and all extensions and branches thereof, and the equipment, property, revenues, and franchises conveyed by said mortgage.

On six months' default in the payment of the interest on this bond, the principal may be made due in the manner set forth in said mortgage.

This bond may be registered, as provided by the indorsement hereon.

This bond shall not be obligatory until certified by said trust company.

In witness whereof, the Minneapolis, Sault Ste. Marie and Atlantic Railway Company has caused its corporate seal to be hereto af-

fixed, and the same to be attested by the signatures of its president and secretary, on the first day of January, 1886.

W. D. WASHBURN,

President Minneapolis, Sault Ste. Marie & Atlantic Railway Company.

M. P. HAWKINS,

Secretary Minneapolis, Sault Ste. Marie & Atlantic Railway Company.

### INDORSEMENT.

This is one of a series of bonds issued by the Minneapolis, Sault Ste. Marie and Atlantic Railway Company as authorized by the mortgage or deed of trust referred to in the within bond.

CENTRAL TRUST COMPANY OF NEW YORK, Trustee.

By E. F. HYDE,
President.

### COUPON.

The Minneapolis, Sault Ste. Marie and Atlantic Railway Company will pay to bearer twenty-five dollars ($25.00) in gold coin of the United States of the present standard, at the office or agency of the company at the city of New York, on the first day of July, A. D. 1890, being six months' interest on its first mortgage bond number 4,028.

C. H. PETTIT,
Treasurer.

$25.00.                                                        No. 9.

### MORTGAGE.

The mortgage or deed of trust given to secure the bonds contains the following provisions, to wit:

And it is hereby declared that the trust, uses, purposes, agreements, and conditions, upon which the lands, railways, grants, ways, rights of way, licenses, easements, and other property, real, personal, and mixed, aforesaid, and all the aforesaid franchises, rights, privileges, and immunities, are conveyed to, and are to be had, held, and disposed of by, the said party of the fourth part, as trustee, and subject to which agreements and conditions the bonds secured hereby are to be issued, and the bonds so issued are to be held by

each and every holder of the said bonds, and the agreements and covenants of the said party of the first part in respect to the said bonds and to the proceeds thereof are as follows, to wit:

If the said party of the first part, or its successors, shall make any default in the payment of any of the principal money, or the interest of said bonds, or some one of them, according to the tenor thereof, or of the coupons thereto annexed, or shall make default in the performance of some other covenant hereof, and in either of such case such default shall have continued for six months after demand made for such payment or performance, then, and in either such case, upon a requisition in writing signed by the holder or holders of said bonds to an aggregate amount of not less than one fourth thereof, and a proper indemnification by such holder or holders of the said trustee against the cost and expenses to be by it incurred, it shall be the duty of the trustee to enforce the rights of the bondholders under these presents by entry, sale, or suit or suits, in equity or at law, as it, being advised by counsel learned in the law, shall deem most expedient for the holders of said bonds.

It is hereby further provided, and expressly agreed and made binding upon each and every holder of the bonds secured by this indenture, as a condition upon which the said bonds are to be taken and held by such holder, that no proceedings at law or in equity shall be taken by any bondholder or bondholders to enforce the payment of the said bonds, or to foreclose the equity of redemption under this instrument, or to procure a sale of the property covered thereby, independently of the party of the fourth part as trustee, or its successor and successors in said trust, except after a requisition shall have been made to the said trustee in manner and form as hereinbefore provided, and also until after a refusal or unreasonable delay of the said trustee to comply with said requisition according to the provisions herein made in respect thereto.

*J. Guilford*, for appellant.

This action is for the nonpayment of an overdue coupon cut from the negotiable bond No. 4,028 of the defendant. The coupon represents six months' interest due upon the bond from January 1, 1890,

to July 1, 1890.    The bond was issued January 1, 1886, payable forty years after date.    This bond is secured by a trust deed of even date, commonly called a mortgage.    The municipal court arrived at its legal conclusion by considering the bond and the mortgage as one transaction.    That the mortgage became a part of the bond by the reference therein made to that instrument.

In order to make one instrument a part of another, the language must be explicit.    A reference in one contract to the existence of a second does not make the second a part of it.    The language must be such that the meaning cannot be misunderstood.    Notice in one contract of the existence of another does not make that other a part of the contract.    The words, "this note is secured by mortgage," do not make the mortgage a part of the note.    They may be notice to put the holder upon inquiry as to the validity of the issue and ownership of the note, but not to enlarge its scope or terms.    The usual purpose of such a notice in the note is to inform the holder of the security.    *Ligget* v. *Bank of Pennsylvania*, 7 Serg. & R. 217; *Welsh* v. *First Division St. P. & P. R. Co.*, 25 Minn. 314; *Philadelphia & B. C. R. Co.* v. *Johnson*, 54 Pa. St. 127; *Montgomery Co. Agr. Soc.* v. *Francis*, 103 Pa. St. 378; *Widener* v. *Railroad Co.*, 1 Wkly. Notes, Cas. 472; Jones, Corp. Bonds, § 339; *Manning* v. *Norfolk Southern R. Co.*, 29 Fed. Rep. 838; *McClelland* v. *Norfolk Southern R. Co.*, 110 N. Y. 469.

*Alfred H. Bright* and *M. B. Koon,* for respondent.

There is no dispute as to the facts in the case.    The question for consideration is whether these facts entitle the plaintiff to maintain this action.    The coupon is a part of the bond.    *First Nat. Bank* v. *County Com'rs of Scott Co.*, 14 Minn. 77, (Gil. 59;) *McClure* v. *Township of Oxford*, 94 U. S. 429; *The City* v. *Lamson*, 9 Wall. 477; 2 Daniel, Neg. Inst. 149.

Hence the provision in the mortgage that "no proceedings, at law or in equity, shall be taken by any bondholder or bondholders to enforce the payment of the said bonds," applies likewise to this action of a bondholder to enforce the payment of the coupon, which is a part of the bond which he holds.    The purchasers of bonds are bound

by the conditions of the mortgage referred to in the bonds. Jones, Corp. Bonds, §§ 191, 196; *McClelland* v. *Norfolk Southern R. Co.*, 110 N. Y. 469; *Manning* v. *Norfolk Southern R. Co.*, 29 Fed. Rep. 838; *Montgomery Co. Agr. Soc.* v. *Francis*, 103 Pa. St. 378; *Caylus* v. *New York, K., etc., R. Co.*, 10 Hun, 295.

*Lusk, Bunn & Hadley*, for appellant on the reargument.

The question for reargument is a very narrow one: Whether the reference in these bonds is such as to make the mortgage stipulations part of the bond. The bonds and coupons are absolute promises to pay to the bearer a certain sum on a certain day; and they are negotiable, unless negotiability is destroyed by some stipulation, or some words of reference, in the bond. *Thomson* v. *Lee Co.*, 3 Wall. 327; *Murray* v. *Lardner*, 2 Wall. 110; *Kneeland* v. *Lawrence*, 140 U. S. 209.

In these bonds there is clearly no stipulation impairing their negotiability directly. This result can only be worked out indirectly by the words of reference to the mortgage. If those words of reference are not sufficient to import into the bond the conditions of payment of the mortgage, the bondholder, so far as respects his personal remedy against the maker, is not bound by the mortgage. *McClelland* v. *Norfolk Southern R. Co.*, 110 N. Y. 469. The fact that these bonds are payable to bearer is evidence that the maker intended them to circulate freely, like money, or other negotiable paper, and that the purchasers of them understood they were negotiable. It is not meant to suggest that all "bearer" bonds must be held negotiable. But the inference is legitimate that "bearer" bonds ought not to be held non-negotiable unless they contain clear provisions compelling that holding. When railroad companies intend to issue nonnegotiable bonds, they commonly make them payable to the "registered holder," and not to bearer. And we believe dealers in this class of securities commonly understand a "bearer" bond to be a negotiable instrument. When a party, therefore, says that such bonds are not negotiable, by reason of a reference to some other instrument, such reference ought to be clear, and not rest on doubtful implication· *Manning* v. *Norfolk Southern R. Co.*, 29 Fed. Rep. 838.

A provision in paper, otherwise negotiable, that the whole debt may fall due before the date fixed, by default in interest, does not destroy negotiability. *Chicago Ry. Equipment Co.* v. *Merchants' Bank,* 136 U. S. 268. "This bond is secured by mortgage" is a common statement in ordinary mortgage notes. The purpose is to add value to the paper, not to destroy its negotiable character; to promote its circulation, rather than retard it; and its circulation would be retarded by such reference, if that was understood by the commercial world to make the paper nonnegotiable.

*Alfred H. Bright* and *M. B. Koon,* for respondent on the reargument.

The question presented for argument, as stated in the order of the court, is whether the recitals in corporate bond in controversy are sufficient notice to the holder of the provisions of the trust deed by which it is secured.

In construing the bond, the indorsement of the trustee must be considered as much a part of it as is any language in the body of the instrument.

The clause in the body of the bond, "this bond shall not be obligatory until certified by said trust company," imports the indorsement into the body of the bond. And the recitals in the indorsement referring to the mortgage are binding upon the purchaser to the same extent as if the same language had been used in the body of the bond itself; and, in considering the sufficiency of the recitals of the bond to charge the holder with notice of the provisions of the mortgage, we assume that the bond contains this provision: "This bond is issued as authorized by the mortgage or deed of trust hereinbefore referred to." If other parts of the bond fail explicitly to state that the mortgage is paramount, no such criticism can be urged against this.

Put a fair, judicial construction upon this language, and it says, in legal effect: "This bond is issued as provided in the mortgage, and subject to all the conditions, covenants, and agreements of the mortgage which may affect the bond in any way." When the purchaser knew that the bond was issued as authorized by the mortgage, he was bound to inquire as to the provisions of that instrument.

The decision of *McClure* v. *Township of Oxford*, 94 U. S. 429, rests upon the fact that the bond cited the statute as authority for its issue, and for this reason the plaintiff was bound to take notice of the statute, and all which it contained.   On this authority it must be held that if a municipal bond recites that it is one of a series of bonds issued by a municipality, as authorized by a special act of the legislature, designating it, the purchaser would be bound to take notice of the statute, as much as if the bond recited that it was subject to all the conditions and provisions of the act.   It is enough that the statute is indicated as the authority for the issue of the bond. And what difference can it make whether the reference be to an act of the legislature, which is nothing but an instrument in writing of a higher order, or to a mortgage, as the authority for the issue?

While making prominent this particular reference to the mortgage, we do not admit that other references are not important.   On the contrary, they would seem to be sufficient on the authorities.   But, taken altogether, the recitals are fully as competent to charge the holders with notice as those involved in any decision of this question.

In this bond is the further provision that "on six months' default in payment of the interest on this bond the principal may be made due, in the manner set forth in said mortgage."   This provision is essentially the same as the similar provision quoted from the bond of the *Norfolk Southern Railroad Company*.   The language, "in the manner set forth in the said mortgage," is fully as comprehensive and as far-reaching as the other language, "under the terms and with the effect mentioned in said mortgage."

The case of *Montgomery Co. Agr. Soc.* v. *Francis*, 103 Pa. St. 378, is very similar to the case of *Manning* v. *Norfolk Southern R. Co.*, decided by the federal circuit court of Virginia.

The question at bar being one of considerable importance, the court has ordered a rehearing, to determine whether or no its former decision ought to be adhered to, before promulgating it as the settled law for this state.   Upon the reasoning and the authorities cited in the opinion filed, and upon the decisions of other courts, and

upon the common principles of construction of written instruments, it is submitted that the decision rendered should stand.

VANDERBURGH, J.    The plaintiff is the owner and holder of a certain first mortgage bond (No. 4,028) made by the defendant for $1,000, with semiannual interest, payable to the Central Trust Company of New York or bearer, with interest coupons attached, each purporting on its face to be for six months' interest on the first mortgage bond of the defendant No. 4,028.    The bond is one of a series of bonds issued by defendant, and recites that the payment of each and all of the bonds, together with the interest thereon, is secured by a mortgage or deed of trust executed by the defendant company to the Central Trust Company of New York, conveying its railway, and all extensions, branches, equipment, property, revenues, and franchises, and that it should not be obligatory until certified by said trust company.    And the bond was accordingly certified as follows: "This is one of a series of bonds issued by the Minneapolis, Sault Ste. Marie & Atlantic Railroad Company, as authorized by the mortgage or deed of trust referred to in the within bond."    It also recites that, on six months' default in the payment of the interest, the principal may be made due in the manner set forth in said mortgage, and, by the terms of the deed of trust referred to, it was provided that all the bonds secured thereby should be held by each and every holder, subject to the trusts and agreements declared and set forth in the deed of trust.    And among the stipulations therein we find the following, in respect to proceedings to enforce the collection of such bonds in case of default:    " 'If the said party of the first part, or its successors, shall make any default in the payment of any of the principal money, or in the interest of said bonds, or some of them, according to the tenor thereof, or of the coupons thereto annexed, or shall make default in the performance of some other covenant hereof, and in either such case such default shall have continued for six months after demand made for such payment or performance, then, and in either such case, upon a requisition in writing signed by the holder or holders of said bonds to an aggregate amount of not less than one fourth thereof, and a proper indemnifica-

tion by such holder or holders of the said trustee against the cost and expenses to be by it incurred, it shall be the duty of the trustee to enforce the rights of the bondholders under these presents by entry, sale, or suit or suits, in equity or at law, as it, being advised by counsel learned in the law, shall deem most expedient for the holders of said bonds. It is hereby further provided and expressly agreed and made binding upon each and every holder of the bonds secured by this indenture, as a condition upon which the said bonds are to be taken and held by such holder, that no proceedings, at law or in equity, shall be taken by any bondholder or bondholders to enforce the payment of the said bonds, or to foreclose the equity of redemption under this instrument, or to procure a sale of the property covered thereby, independently of the party of the fourth part as trustee, or its successor and successors in said trust, except after a requisition shall have been made to the said trustee in manner and form as hereinbefore provided, and also until after a refusal or unreasonable delay of the said trustee to comply with said requisition according to the provisions herein made in respect thereto.' And the court finds that none of said conditions contained in the mortgage deed have been complied with on the part of plaintiff."

1. The obligor covenants in the bond to pay the interest as well as the principal. The interest is evidenced by the coupons, which are each referred to in the bond, and identified as being for six months' interest thereon, and are to be treated as a part of the bond, and subject to the same conditions as the principal, and to the terms of the trust deed. The plaintiff, as the holder of the bond and coupons, was put upon inquiry by the recitals in the bond, and charged with notice of all the terms and conditions of the trust deed, and is bound by the stipulation therein, above referred to, providing that each bond should be held subject to the agreements in such deed. When, therefore, plaintiff purchased and became the holder of the bond in question, he voluntarily became a party to such stipulations, and is bound by the contract.

2. It will be observed that the mortgage covers all the property, revenues, and franchises of the defendant; and, in case of default in

the payment of the interest, a procedure for the collection thereof, by the mutual agreement of the parties, is provided for in the deed, through the enforcement of the security. Some such provisions appear to be necessary in such cases on account of the nature of the security, number of the bondholders, and character of the business from which the revenues are derived. Regard must be had to the interests of the bondholders, or the majority of them, as a class. Their rights, for the most part, depend upon the terms of the trust deed, and it is competent for them to agree upon the same. Plaintiff was brought "into contract relation with each and all of his co-bondholders, and his absolute rights as a bondholder are limited by the provisions of the bond and mortgage, and the peculiar nature of the security." 2 Beach, Priv. Corp. § 769; Tayl. Corp. § 674. Hence it is the contention of the defendant that, by the terms of the trust deed accepted and agreed to by all the bondholders, the defendant is not entitled to maintain this action, because it appears that the remedy thereby provided has not been resorted to in the first instance. And this contention is, we think, warranted by the terms thereof, wherein, it will be seen, it is expressly agreed by each and all the bondholders, as a condition on which the bonds are taken and held, that no proceedings, at law or in equity, shall be taken by any bondholder to collect his bond until after a refusal or unreasonable delay on the part of the trustees to proceed as therein required. The court may undoubtedly interfere in cases of fraud or collusive mismanagement or neglect of duty on the part of the trustees, and they may be compelled to act when it is clearly their duty to proceed in order to protect the interests of the bondholders. Tayl. Corp. § 815; *First Nat. Fire Ins. Co.* v. *Salisbury,* 130 Mass. 303. This would not be inconsistent with the terms of the contract. Any appropriate remedy would undoubtedly be open to the bondholder, in case of abuse of their power, or clear neglect of duty, on the part of the trustees.

The case presents no constitutional question. The conditions under which suits by individual bondholders may be sustained upon the bonds is the subject of contract. So, also, the order in which remedies shall be pursued may be regulated by the legislature. *Swift* v. *Fletcher,* 6 Minn. 550, (Gil. 386.)

It is incident, to a contract involving joint relations, that one of several parties may not be authorized to sue alone, except upon certain conditions or in certain contingencies. It is a part of the risk of the venture. But the ordinary remedies which are provided for the protection of parties so jointly interested, as in the case of partners or corporations, are usually found adequate and available. The cases cited by the appellant are not in point here. The proceedings by the trustees are not there made the exclusive remedy. None of them question the doctrine that it is competent for the parties to agree to make it so in the first instance. Jones, Corp. Bonds, § 340. In *Widener* v. *Railroad Co.*, 1 Wkly. Notes, Cas. 472, the terms of the deed did not prohibit a judgment, but merely the sale on execution of the property mortgaged by the company.

Judgment affirmed.

ON REHEARING.

March 9, 1892.

VANDERBURGH, J. Upon the original argument of this case the attention of the court was more particularly drawn to the terms of the stipulation in the trust deed in respect to the enforcement of the bonds, which it was claimed is binding upon the bondholders. The stipulation is set out in full in the foregoing opinion. The proposition is not seriously disputed that, if this stipulation had been actually incorporated into the bonds, or had been so clearly referred to by recital as to notify the bondholders of its existence, and in legal effect import it into the bonds, the purchasers and holders would have taken and held the bonds subject thereto, and would have been bound by it. An analysis of the authorities cited will, we think, show that none of them hold a different doctrine. Thus, in *McClelland* v. *Norfolk Southern R. Co.*, 110 N. Y. 469, (18 N. E. Rep. 237,) the mortgage provided: "Among other things, that in every case of default of the payment of the money thereby secured, or any part thereof, in respect of any covenant or agreement in the bonds secured thereby, the duty of the trustees in the premises was declared to be subject to the right and power of a majority in interest of the holders of the bonds to instruct the said trustees to waive such default, or enforce their rights thereunder," etc. And it was held that,

by reason of the reference made on the face thereof to the terms and conditions of the bonds, the holders were bound by the provisions of the trust deed in respect to a waiver of defaults; and the court say,— 110 N. Y. 477, (18 N. E. Rep. 241:) "If, therefore, the act of the trustees in postponing payment of the interest becoming due was authorized by the provisions of the mortgage, it must follow that the holders of coupons are bound by their action, and are not entitled to maintain actions at law upon such coupons." All the cases agree that the coupons stand upon the same footing as the bond, and the rights of the holder are of no higher order. They are subject to the same conditions as a bond, in respect to their relation to the trust deed. *McClure* v. *Township of Oxford*, 94 U. S. 429.

The only question requiring serious consideration in this case is the sufficiency of the notice in the bonds to make them subject to the provisions in the trust deed above referred to, in the hands of *bona fide* holders. Upon this question the authorities are not very clear or satisfactory. In the case above cited from the court of appeals in New York the reference in the bonds was as follows: "*Full payment of the principal and interest of the said series of bonds is secured by deed of trust or mortgage upon the property and franchises of said railroad, upon the terms and conditions fully set forth in the said mortgage or deed of trust;*" and, in case of default in the payment of the interest for six months, the principal was, at the option of the holder, to become due and payable immediately, upon the terms and with the effect mentioned in said deed of trust. These premises were held to be notice to the holders, so that the conditions of the deed referred to were to be read in connection with the bond as a part of the agreement by which the bondholders were bound. In the case of *Manning* v. *Norfolk Southern R. Co.*, 29 Fed. Rep. 838, decided by the judge of the United States circuit court, E. D. Virginia, and which was cited on the argument of the last-mentioned case in the court of appeals, but not followed, this question was not considered, but the court held that the provisions of the mortgage were not sufficiently clear to warrant the construction claimed for it by the defendant. In *Caylus* v. *New York, K., etc., R. Co.*, 10

Hun, 295, the court seems to hold that the mortgage, being referred to in the bonds, became a part of them, and that a purchaser was bound by statements in the mortgage affecting his interest. The holders were not, however, in that case, *bona fide* holders, and the questions involved were unlike that under consideration here. The case was affirmed in 76 N. Y. 609, but this point does not seem to have been considered. In *McClure* v. *Township of Oxford, supra,* the bond was issued by a municipal corporation, and recited on its face the act which authorized its issue. *Held,* that the holder was bound to take notice when the statute took effect, and that the bond was by its terms prematurely issued. But the general rule is that, when bonds on their face import a compliance with the law under which they are issued, though that be referred to therein, *bona fide* purchasers are not bound to look further for evidence of a compliance with the conditions of the grant of power. *Commissioners of Knox* v. *Aspinwall,* 21 How. 539, 545. The only matters open for inquiry in a suit by the purchaser is the *bona fides* of the purchase, and the statutory authority to issue the bonds. *Rouede* v. *Mayor, etc.,* 18 Fed. Rep. 719, and cases. The doctrine of these and other cases shows that the duty to make inquiry may be limited by the general nature of the recital. We do not think that a mere recital that the bonds were secured by the trust deed, with only a general reference to a description of the deed, would affect the negotiability of the bond, or be sufficient to put purchasers upon inquiry, so as to constitute notice to a *bona fide* purchaser that they were to be enforced at law only after an attempt to collect the same through the trustees, as provided by the deed. It is true that the bond disclosed on its face that the entire series of bonds of which this is one is secured by a mortgage which covers all the property, franchises, and revenues of the mortgagor, and the security is for the benefit of all; and equity, therefore, would not permit one bondholder, by independent legal proceedings, to secure an unjust advantage over the other bondholders, if the revenues or property of the company were insufficient to pay all. They have a common interest in the security, and all are equally entitled to the

benefit of it.    No one of them can be permitted to obtain an equitable preference over his associates.    *Pennock* v. *Coe*, 23 How. 117, 131; *Com.* v. *Susquehanna & D. R. R. Co.,* 122 Pa. St. 306, (15 Atl. Rep. 448;) Jones, Corp. Bonds, §§ 292, 293.    All of the bonds stand, presumptively, upon the same footing.

Undoubtedly the peculiar provision in the trust deed under discussion was intended to protect the mortgaged property from the liability of seizure at the suit of individual bondholders; but, as it is inconsistent with the absolute obligation which the bond imports on its face, and is not suggested by anything appearing thereon, it would hardly be a fair construction of the instrument to hold that the bond was notice to the holder that his right to bring suit for the interest, when due, was qualified by anything in the trust deed.    The rights of the other bondholders are not affected by the prosecution of the suit or recovery of the judgment.    The question could only be raised on their behalf upon interference with their rights, actual or threatened, under attachment or execution sued out in an action at law. We do not think the notice in the bond that it is not to be obligatory until certified by the trust company or the certificate of the trust company indorsed thereon were intended to be, or are in fact, notice of the provisions of the trust deed in relation to the enforcement of the bonds.    The certificate was merely the method of authentication agreed on, and was essential to their validity; but it is notice of nothing more.    Jones, Corp. Bonds, § 210.    It shows that the bonds were duly authorized and lawfully issued, and were genuine bonds of the class and number secured by the mortgage, and therefore entitled to the benefit of the security.    But there is nothing in it to put holders upon inquiry in respect to provisions relating to personal actions upon the bonds, or reasonably calculated to suggest that the trust deed might contain provisions other than relating to the enforcement of the same as security.    Bonds of this character generally refer to the mortgage or trust deed by which they are secured; and, being placed in the market as negotiable securities, to be sold to *bona fide* purchasers, the fair inference from the general recital in the bond that it is one of a series secured by a mortgage deed to a

certain trustee, upon the property of the railway company whose absolute obligation it purports to be, is that such recital is introduced into the bond to indicate the nature of the security, and add to the credit of the bond, and does not alone import into the bond special provisions not affecting the nature or enforcement of the security, and at variance with the tenor of the bond itself. The policy of the law is to hold such instruments negotiable unless there is enough on the face of the bond to suggest inquiry in respect to the existence of facts destroying their negotiability.

We conclude, therefore, that upon the evidence in the case the plaintiff is entitled to recover, and the judgment is accordingly reversed.

(Opinion published 51 N. W. Rep. 658.)