FIRST NAT. BANK OF DALLAS v. BROWN et al.

No. 2468.

Court of Civil Appeals of Texas. El Paso.

Dec. 18, 1930.

Rehearing Denied Jan. 15, 1931.

Coke & Coke and Rosser J. Coke, all of Dallas (B. O. Baker, of Dallas, of counsel), for appellant.

W. H. Clark, Jr., H. P. Edwards, and Dexter Hamilton, all of Dallas, for appellees.

WALTHALL, J.

This case involves the question of whether bondholders are entitled to a receivership on default in the payment of interest, and the validity of a trust deed where the trust agreement under which the bonds were issued provides that the trustee shall have the exclusive power to enforce the security in case of default in the payment of the principal or interest.

Buck W. Brown, plaintiff, holder of a bond in the sum of $100, secured the Series A Trust Fund, and of 75 shares of Class C preferred stock of Investment Securities Company of the par value of $100 per share, and also the owner of 524 shares of the common stock of said company of the par value of $10 per share, originally brought this suit on February 26, 1930, in the 95th district court of Dallas county, Tex., against the Investment Securities Company, a Texas corporation, and the First National Bank at Dallas, a national banking corporation (formerly the American Exchange National Bank, and so referred to in the record), for the purpose of recovering upon his $100 bond and collateral to such recovery of conserving and liquidating the securities constituting the trust fund, and also of liquidating the assets of the company, and recovering through his stockholders bill the value of his preferred and common stock. The relief prayed for by him was based upon the allegation that the trust fund securing his $100 bond was in the hands of the defendant bank, which was acting solely as a depository trustee, and that the trust fund, through the failure of the bank to actively handle such trust fund, and through the wrongful act of the Investment Securities Company in placing in said trust fund notes having inadequate security value behind them, and notes not representing bona fide loans, had impaired and jeopardized the security behind the Series A bond of which plaintiff's $100 bond was one.

On the same day that plaintiff's petition was filed, Miss Mary Fuller, owner of $1,300 of Series A bonds, which had matured both as to principal and interest, by plea of intervention made herself a party plaintiff, adopted the allegations of plaintiff's petition, and asked recovery on her bonds and that the relief prayed for by plaintiff be granted her as a like Series A bondholder.

On March 19, 1930, Security Union Insurance Company, owner of $10,000 of Series A bonds, which did not mature as to principal until January 1, 1932, but which had matured and were in default as to interest, by its plea of intervention made itself a party plaintiff and adopted the allegations of plaintiff's petition and prayed for like relief.

On March 21, 1930, Mrs. Alice P. Ward (later succeeded by her executrices, Sophronia Ward and Mary Ward), owner of $3,000 of Series A bonds which on January 1, 1930, both as to principal and interest, were in default, by plea of intervention made herself a party plaintiff and asked for recovery on her bonds, and that she be granted like relief.

The specific allegations made by plaintiff and adopted by all interveners, and upon which the temporary order appointing a receiver of the Series A Trust Fund is predicated, briefly stated, are:

(a) That plaintiff and interveners are the owners of Series A bonds, $4,300 principal of which is in default since January 1, 1930, and interest on $14,400 of which is in default since January 1, 1930.

(b) That said bonds are of a series of $996,500 of Series A bonds, all secured by a lien on certain real estate notes in the aggregate sum of slightly more than $1,000,000, and that the principal of a large part of said bonds became due and was in default since January 1, 1930, and that the interest on all of said bonds was likewise in default since January 1, 1930.

(c) That demand had been made for payment of said sums and that both the company and the trustee had failed to make payment thereof.

(d) That the obligation resting upon the Investment Securities Company under the trust indenture made with the defendant bank was to transfer to the bank certain notes secured by liens upon real estate worth at least double the face value of such notes, and that the company, pursuant to such plan, had transferred to the bank an aggregate of 211 promissory notes secured severally by liens on tracts of land, the value of which in the aggregate was alleged to be the sum of $1,142,450, and that such notes or the proceeds thereof were in the hands of the defendant bank.

(e) That the defendant bank, as trustee, named in such trust indenture, had undertaken to act only as a depository trustee without any provision in said instrument for an active management of such trust fund, and without any effort upon its part to do more than hold such notes and moneys as had been delivered to it by the Investment Securities Company, and that the trustee had not made any effort in the past to investigate or inquire into either the validity or the value of any notes which had been delivered to it as a part of such trust fund.

(f) That the defendant company did not, in accordance with the terms of said trust indenture, transfer to the trustee notes which

were secured by liens upon property, the value of which was at least double the face value of the notes transferred, but that the company, by causing appraisals of the properties involved to be made at a greater value, made loans upon tracts of land greatly in excess of 50 per cent. of the value thereof, and transferred the notes evidencing such loans to the trustee purporting to act in accordance with the terms of said trust indenture, but that in fact as a result of such dealings the said trustee acquired through the course of such dealings notes, the aggregate nominal value of which is in excess of the aggregate total amount of issued and outstanding Series A bonds, but which in fact are worth much less than said sums, so that the trust to which plaintiff and interveners, as well as other similarly situated to them, must look as security for the payment of the indebtedness owing to them, is actually insolvent and of a value insufficient to pay to plaintiff and interveners, and other like bondholders, more than 85 per cent. of the amount of their bonds.

(g) That default had been made in the payment of a large number of the notes held by the trustee, and that it had become necessary to foreclose upon more than forty of the tracts of land securing the several notes in the hands of the trustee, and that the properties foreclosed upon had to be rented or handled otherwise so as to obtain revenue therefrom during the interval which must ensue between the date of foreclosure and the date upon which a sale of said properties must be made for the purpose of liquidating such properties and applying the proceeds thereof to the payment of Series A outstanding bonds. But the work incident to such enforced liquidation involves the handling of the funds which might be derived from the rental and subsequent sale of such properties as well as the handling of the funds which shall be received as to principal or interest upon the original notes placed in the hands of the trustee, and that there was a necessity for the intervention of a court of equity and for the appointment of the court of a receiver to take possession of the funds and properties constituting the trust created under said trust indenture, and for the application of the proceeds of such trust to the satisfaction of such outstanding bonds.

(h) That the defendant company had made foreclosures upon the properties behind the delinquent notes in such trust fund upon inferior lien or interest notes held by said company, and that the defendant company through such foreclosures had reduced to its possession the properties behind such delinquent notes, and had made available to it instead of to the trust fund the equities in such tracts of land and was collecting the rents on such foreclosed properties and undertaking to realize for itself the excess values represented by such properties, and expend the same through its ordinary channels in the operation of its business, instead of applying the proceeds of such properties to the satisfaction of the notes held by the trust fund.

(i) That the defendant bank took the position at the time this suit was instituted that it had no power under the trust indenture except to hold the trust funds until after a period of sixty days should elapse from default, and that through the failure of the bank to discharge its duties as trustee under such instrument, and the failure and wrongful acts of the defendant company, the trust fund was being depleted and in danger of further depletion.

(j) That the defendant company was insolvent, and that it had no funds available with which to pay the Series A bonds except the securities in the hands of the trustee.

(k) That the defendant bank, as trustee, had not assumed any obligation under the terms of the trust indenture to act in the management and liquidation of such trust, and that it had only bound itself (1) "to certify and deliver the bonds to the company;" (2) "to hold the cash and securities;" (3) "after default of the company for a period of sixty days, and upon request of the holders of 51% of said bonds to declare all of said bonds due and to sell said securities at public sale." That if it should be attempted to sell the securities constituting such trust fund in lump at public sale upon the demand of 51 per cent. of the holders of such bonds, the reasonable value of such trust fund could not be realized for bondholders, and that the securities constituting such trust fund would be greatly reduced in value and the claim of plaintiff and interveners evidenced by their Series A bonds could not be paid in full.

Plaintiff and interveners respectively pray that they recover their debts together with foreclosure of their liens on the funds and properties in the hands of the trustee; that they be permitted to participate in the distribution of the funds and properties constituting such trust fund ratably with other like bondholders; that a receiver be appointed with authority to take into his possession the funds and properties constituting the trust fund, and with such other powers as the court might from time to time deem appropriate, manage, control, sell, or otherwise dispose of same in accordance with the orders of the court, such trust fund for the purpose of reducing same to cash and ratably paying same to bondholders entitled to participate in such proceeds, and that they have such other relief in law or equity as the court might deem proper.

On March 24, 1930, the defendant, First National Bank, filed a motion to remove the cause to the 101st district court of Dallas

county, Tex., on grounds stated in the motion, which motion the court overruled and the bank excepted. Thereafter on March 24, 1930, the First National Bank (formerly the American Exchange National Bank) filed its answer to plaintiff's petition and the pleas of intervention, its answer consisting of general and special exceptions, general denial, a plea to the merits wherein it raised the question both by exception and plea whether a bondholder and stockholder could maintain receivership proceedings, such as are brought, because of the provisions of the trust agreement negativing such proceedings, and because the law does not provide for such suits.

On March 24, 1930, the Investment Securities Company of Texas filed its answer adopting the answer of the First National Bank. The court overruled all demurrers, to which exceptions were taken. The case was tried to the court without a jury. The court heard the evidence and entered an order refusing the appointment of a receiver of the general assets of the defendant Investment Securities Company of Texas. The court entered an order granting the application of plaintiff and interveners for the appointment of a receiver of the funds, notes, and properties held by the First National Bank securing the Series A first mortgage collateral trust gold bonds issued by Investment Securities Company of Texas under the trust indenture dated July 15, 1924, between the Investment Securities Company of Texas and American Exchange National Bank, to which order the First National Bank duly excepted, gave notice, and perfected its appeal.

The trial court filed findings of fact and conclusions of law, to which the First National Bank duly excepted; which exceptions were overruled, and the First National Bank excepted and gave notice of its appeal.

The findings of fact made by the court are necessarily lengthy, embracing some seventeen pages of the record. We will not copy at length the findings, but will copy such parts of it under the propositions which seem applicable to the point then under discussion.

#### Opinion.

The first twelve of appellant's sixteen propositions complain of the overruling of its exceptions to appellees' petition. The first proposition submits that since the petition shows on its face that the enforcement of the rights against the trust property should be through the trustee, and there is no allegation that appellees have pursued or attempted to pursue the course prescribed in the trust agreement contract, and since there is no allegation of dereliction on the part of the trustee under such trust agreement, its general demurrer should have been sustained.

In Employers' Reinsurance Corporation v. Boston Mutual Life Insurance Company et al.,

45 F.(2d) 593, appealed from the District Court of the United States for the Northern District of Texas, the opinion filed on December 6, 1930, in which appellant filed a bill to foreclose a mortgage on an improved city lot in Dallas, and in which a mortgage was given to a trustee to secure certain bonds, and contained provisions to the effect that in the event of default the trustee was authorized, and, upon request of the bondholders of a majority in amount of the bonds, the trustee was under the duty to foreclose, that no bondholders should foreclose or enforce any right under the mortgage until the trustee or his successor should wrongfully refuse such request to foreclose, it was held:

"In the absence of a refusal by the trustee to bring suit, and in the absence of fraud which is not charged, appellant, as a minority bondholder, had no standing in court, since the right to foreclose under the terms of the mortgage existed only in favor of the trustee. The right of a minority bondholder to foreclose under the facts alleged was withheld and denied by the provisions of the mortgage. It is well settled that those provisions conferred a valuable right on the majority bondholders which a minority bondholder in the absence of fraud could not destroy or impair by bringing suit. Chicago, etc., R. R. Co. v. Fosdick, 106 U. S. 47, 77, 27 L. Ed. 47; Guilford v. Minneapolis, etc., Ry. Co., 48 Minn. 560, 51 N. W. 658, 31 Am. St. Rep. 694; Seibert v. Minneapolis, etc. Ry. Co., 52 Minn. 148, 155, 53 N. W. 1134, 20 L. R. A. 535, 38 Am. St. Rep. 530.

Appellant refers us to the above as applicable to the instant case. An inspection of the trust agreement here discloses that no provision, or similar provision, as contained therein is found in the agreement in this case. The court in that case was enforcing the provisions of the mortgage agreement.

We think the case is not directly in point.

The provision in the trust agreement referred to in the first proposition reads as follows:

"In the event any default hereunder on the part of said company (the Investment Sureties Company) shall continue for sixty days, then and in such case said trustee (American Exchange National Bank of Dallas, Texas, later, appellant the First National Bank of Dallas, Texas) may declare all of the bonds then certified and outstanding hereunder, principal and all accrued interest, due and payable, and in such case it may sell aforesaid notes deposited hereunder at public sale and apply the proceeds thereof, and any cash held by it hereunder, less its proper costs and charges in the premises, to the liquidation of the bonds certified and outstanding hereunder; provided upon request of the holders of fifty one percent in an amount of said bonds the Trustee shall, in event of default

hereunder for sixty days as aforesaid, declare all of said bonds, principal and interest, due and payable, and shall proceed to sell said notes deposited hereunder at public sale, and apply the proceeds as above stated, etc.; provided further above remedy by sale shall not be exclusive, but said trustee shall have the right to any judicial remedy necessary or appropriate in the premises for the protection or enforcement of the rights and liens of the bondholders hereunder. The security hereby created and held by said trustee under this indenture shall be enforced only by and through said trustee but any holder whose bond is due and unpaid may sue said company thereon and obtain a personal judgment against it.

"Said Trustee shall at any time have the right to resign this trust after sixty days written notice to said Company.

"In such case, or in case it should at any time fail or refuse to act hereunder, the holders of at least fifty-one percent of the bonds certified and then outstanding hereunder shall have the right to appoint a successor trustee, in writing, who shall thereupon succeed to all the money, securities, property, rights, powers and trusts vested in said original trustee, and then (when) the original trustee shall have turned over to such successor trustee all money, securities and property of every character for which it is accountable hereunder, it shall be relieved from all further liability thereunder."

Appellant insists under this proposition that appellees' petition having made no allegation of fraud, or conspiracy, or that the trustee is antagonistic, or has interests opposed to appellee, or had been requested to act, or was incapable of acting or had failed or refused to act, or was disqualified from acting, its general demurrer should have been sustained.

Appellees counter with the proposition that the trust indenture contract between the Investment Securities Company and American Exchange National Bank, trustee, that the collateral security underlying the bonds sued upon should be enforced only by and through the trustee, is void, because it ousts the district court of its inherent statutory and constitutional jurisdiction, and refers to the finding of the trial court in appointing the receiver of the Series A Trust Fund, as follows:

"The court is of the opinion and so finds that the stipulation of the trust agreement which declares that the trustee has the exclusive power and right to enforce the security for the protection of the bonds is ineffective and void, and that necessity exists for the appointment of a receiver of said funds and properties as prayed for."

If, as submitted by appellees, and as found by the trial court, the above-quoted stipulations in the trust agreement render the agreement ineffective and void, and that necessity exists for the appointment of a receiver, by reason of matters alleged and found, we need not discuss at this point the insufficiency of the petition by reason solely of the omission in its allegations of the facts pointed out. So we will direct our consideration to what seems to be the vital issue in the case, namely, whether the stipulation in the trust agreement that the trustee has the exclusive power and right to enforce the security for the protection of the bonds, to the exclusion of the courts, except as to obtaining a personal judgment, renders the trust agreement ineffective and void as to said provision. No question is raised that the court has not properly construed the effect of the stipulation in the trust agreement, that it was intended to and does by its verbiage have the effect to give the sole right and power to the trustee to enforce its provisions to the exclusion of any action of the court in appointing a receiver, so we accept without question the effect of the stipulation as construed by the trial court.

It would extend the opinion to too great length to discuss all of the cases found in the briefs of appellant and appellees, though we have read them. Appellant refers us to Muren v. Southern Coal & Mining Company, 177 Mo. App. 600, 160 S.W. 835, 836, by the St. Louis Court of Appeals, as in point. The case might be in point on other propositions submitted, but we think it is not on the point now under discussion. In that case, while the mortgage indenture provided that in case of default no holder of bonds should have the right to institute any suit or action without first giving notice to the trustee of such default and the trustee had failed to exercise the powers granted him, and other similar provisions, which the court held to be reasonable stipulations, and only postponed the right to sue, a clause in the mortgage instrument providing for suit to foreclose the mortgage by the trustee upon certain contingencies specified, "and take such other legal steps as may be necessary to secure to the holders of said bonds, * * * and upon the filing of a bill in equity or other appropriate proceeding to foreclose this mortgage in any court of competent jurisdiction, the court may appoint the trustee or some other suitable person receiver of the property and rights hereby mortgaged," etc. It seems clear that the mortgage instrument in that case, and the cases there referred to, do not, as here, provide for the exclusive right of the trustee to the exclusion of the right of holders of the bonds, to sue and invoke the powers of the court to appoint a receiver where the facts would justify a suit, and in the suit, the appointment of a receiver. The case of Jones et al. v. Atlantic & W. R. Co., 193 N. C. 590, 137 S. E. 706, 710, a North Carolina case, apparently supports appellant's contention.

In that case the trust deed from the Atlantic & W. R. Co. to the Fidelity Trust Company by which the funds were secured contained the following provision:

"No holder of any bond or coupon issued hereunder or secured hereby, shall have any right to institute any action at law or suit in equity for the foreclosure of this indenture, or for the execution of any trusts hereunder, or for the appointment of a receiver, or for the protection of the mortgaged premises, or for the enforcement of any covenant of this indenture, or for any other remedy under this indenture, either at law or in equity."

Without quoting at length the reasoning of the court, or the cases referred to, the court said, in reversing the case appointing a receiver, which seems to express the tenor of the court's view: "Their remedy under the deed of trust is adequate. . Having agreed to rely upon this remedy only [the provisions in the trust deed] for the enforcement of their rights as holders of the bonds, they must be content therewith."

Seibert v. Minneapolis & St. L. Ry. Co., 52 Minn. 148, 53 N. W. 1134, 1136, 20 L. R. A. 535, 38 Am. St. Rep. 530, to which appellant refers us, was a suit brought to foreclose a mortgage executed by the railway company to the Farmers' Loan & Trust Company and the Central Trust Company, which were superceded by the appointment of Siebert as trustee in their place. F. H. Griggs intervened and from an order sustaining a demurrer to his complaint, he appealed. The provision in the mortgage is lengthy and we quote only in part. It recites that it is expressly agreed and made binding upon each and every holder of bonds secured hereby, "that no proceedings at law or in equity shall be taken by any bondholder to foreclose the equity of redemption under this instrument, or to procure a sale of the property covered thereby, independently of the party of the second part, trustee, or its successors in said trust, except after a requisition shall have been made to the said trustee," then a statement of refusal of the trustee, and other matters as provided. Intervener submitted that the provision was an attempt to oust the jurisdiction of any court to entertain a complaint by or give relief to the holders of bonds less than a percent as stated in other parts of the instrument. After discussing the provisions of the instrument, the court said, in construing the instrument:

"It is not the intention or effect of such conditions or stipulations to divest the bondholders of their right to judicial remedies, or to oust the courts of their jurisdiction; it is merely the imposition of certain conditions upon themselves in respect to the exercise of that right. And this distinction is well recognized by the courts." (Referred to other cases in that state.)

We do not consider the case directly in point for the reason that by its terms it permits a resort to the court under the contingencies stated which seem not to be unreasonable, and the court so held. We have referred to the above cases to make clear appellant's view as we understand it, and as stated in the proposition that parties holding bonds under the trust agreement agreed that the enforcement of their rights against the trust property should be through the trustee and not through a receiver appointed by the court. Some of the courts so hold as contended by appellant.

On the other hand, it has been decided in a great number of cases, and conceded in other cases, to be settled law that the jurisdiction of the courts cannot be ousted by the private agreements of individuals made in advance; that private persons are incompetent to make any such binding contracts; and that any such contracts are illegal and void as against public policy. 7 R. C. L. at page 1046, and note 3, where many cases are referred to as sustaining the above view as to jurisdiction of the courts.

Jurisdiction, as applied to the subject-matter of a suit at law or in equity, must be found in and derived from the law. 15 C. J. p. 730, and note 52, where many cases are cited.

In International Travelers Ass'n v. Branum, 109 Tex. 543, 212 S. W. 630, 632, the Supreme Court of this state, after referring to and quoting from a number of cases, said:

"We are convinced that it is utterly against public policy to permit bargaining in this state about depriving courts of jurisdiction."

In Queiroli v. Whitesides (Tex. Civ. App.) 206 S. W. 122, 123, where the contract contained a clause to the effect that any dispute arising out of such contract is to be settled by arbitration, the San Antonio court held that "such a provision is contrary to public policy and will not oust the jurisdiction of the courts. Ruling Case Law, vol. 2, p. 360; Corpus Juris, vol. 5, p. 42, §§ 68, 69; Elliott on Contracts, § 726."

In Bull Dog Auto Fire Ins. Ass'n v. Brown (Tex. Civ. App.) 287 S. W. 76, the Waco court held that parties cannot by agreement take away jurisdiction conferred by Constitution and statute.

We need not further refer to cases in this and other states on the point presented. The rule seems to be general and adopted in this state that contracts which undertake to deprive courts of jurisdiction conferred by law are contrary to public policy and void.

We think it necessarily follows that if the trust agreement is void as against pub-

lic policy, and the appellees are not undertaking in the suit to assert and enforce their rights through the trustee named in the trust agreement, but independently of the trustee, it would not be necessary to the proper statement of a cause of action that demand had been made of the trustee to enforce appellees' rights against the trust property, or to allege that the trustee is not capable or able to enforce appellees' rights against the property, or that the trustees interests are opposed to appellees' interests, or that the trustee was not the proper one to enforce their rights, as submitted in the several propositions, complaining of the overruling of the special exceptions to appellees' petition.

■■ We do not concur in appellant's statement in its tenth proposition that appellees' petition shows on its face that the suit is for the appointment of a receiver only and not ancillary to any main suit. We concur in the statement under the proposition that the general rule announced in Parker et al. v. American Sulphur & Fertilizer Co. et al. (Tex. Civ. App.) 3 S.W.(2d) 124, is that a bill which has for its sole object the appointment of a receiver, and no cause of action or equitable relief is otherwise stated, such suit cannot be maintained.

Appellees' petition is elsewhere set out. It states that appellees' own bonds of Series A, their maturity and demand, default in payment, that they are secured as to payment stating same, prayed for judgment for their debt as evidenced by the bonds sued on with foreclosure of lien, and in the alternative that their claims be established, and in the alternative that they be permitted to participate in the distribution of the funds of the trust; that the corporation be dissolved and the assets be applied as stated; that a receiver be appointed with the powers prayed for in the liquidation of the affairs of the corporation, etc.

■ Appellant submits that the petitions of appellees failing to show that the appointment of a receiver will not result in impairment and sacrifice of the trust property, it was error to overrule the trustee's exception on that ground.

The trial court, having heard the evidence and construing the petition, found:

"That in order to prevent a waste of the mortgaged property and collateral securing said bonds, said suit was filed for the purpose of asking said District Court to supervise the liquidation of the mortgaged property and collateral, and for the purpose of asking additional remedies in the liquidation of said collateral."

We do not understand the courts as holding, in the cases cited, that the petition should state that the appointment of the receiver would not result in the impairment or sacrifice of the mortgaged property.

■■ No reversible error is shown in overruling appellant trustee's motion to transfer the case to the 101st district court. If we are not in error in holding that the trust agreement is ineffective and void, in the particular stated, and, as found by the court, the suit would not be controlled by its provisions as to the time of filing suit, should the statement in the trust agreement be construed to postpone the filing of the suit for sixty days after default. The trust agreement, however, does not in our opinion so provide. It provides only what the trustee may do in the event any default shall continue for sixty days, but does not by its terms postpone suit for the personal judgment permitted. As shown by the record, this suit was filed in the 95th district court before the appellant trustee's suit was filed in the 101st district court.

In considering other propositions we have expressed our view on the matter submitted in the fifteenth.

■ The trial court found that the Investment Securities Company of Texas is insolvent, and the only funds out of which the Series A collateral mortgage bonds issued and outstanding by said company for the total amount of $996,700 principal, plus interest thereon at 7 per cent. per annum from January 1, 1930, can be paid, are such funds as may be derived from the liquidation of the notes and properties deposited with and held by the First National Bank in Dallas as collateral security for said bonds. The court concluded from the finding, as a matter of law, that in order to protect the rights of appellees as holders of the secured Series A mortgage bonds of the Investment Securities Company and to prevent waste, loss, and depletion of the collateral security to said bonds, a necessity exists for the appointment of a receiver to take charge of, collect, preserve, reduce to cash, and ratably distribute the proceeds of the collateral and properties securing said bonds among the bondholders. Appellant submits that the above finding upon which the conclusion is based is unsupported by the evidence.

A receiver in this state may be appointed in cases where a corporation is insolvent or in imminent danger of insolvency. The petition alleged insolvency of the Investment Securities Company. We think in determining the issue of the fact of insolvency we may look only to the evidence as to the funds out of which Series A collateral mortgage bonds can be discharged, and to such evidence only as might be held sufficient to sustain the court's finding. The evidence is voluminous, covering several hundred pages of the record, and we can quote here only brief extracts

from a few of the witnesses. E. R. Brown, a director of the company. witness for defendant, said:

"The Investment Securities Company is not able at this time to pay the Series A bonds; at this time they are not able to pay either the principal or interest." (then giving his reason for so stating, the witness said:) "Question: Are you in a position to tell the court the value of a share of stock, a share of preferred stock, in the Investment Securities Company? Answer: I don't think it has any value. Question: What about a share of the common stock? Answer: It would not have any, preferred or common. It is my opinion that neither one of these stocks would have any value at this time. * * .* The Board of Directors have met a great many times in trying to conscientiously supervise the running of this Company. I think that the principal reason that the Investment Securities Company has gotten into this embarrassed condition is that the values of real estate have decreased."

J. K. Hester, a director of the company from its inception, a witness for defendant, testified. After testifying at length as to the management of the company, he said:

"I think it must have been the middle of last summer when the Company got embarrassed, I think it was in June, it was apparent then. The Loan Committee immediately discontinued making loans. I think it was under a motion of the Directors. * * * Referring to the financial embarrassment of the Company and the cause of this embarrassment, in my opinion: I do not know which I might designate as the major cause. (Then states at length witness' view). * * * The picture began to get a little cloudy even in January of 1929. There is no question in the world in my mind that this Investment Securities Company is financially embarrassed at this time. I have personally 'charged off' my own common and preferred stock in this Company."

Nathan Adams, president· of the First National Bank in Dallas, a witness for defendant, testified· at length as to the bank's ·attitude and connection with the matter, and said:

"Question: Do you know whether the Investment Securities Company is solvent or insolvent? Answer: I should say that it is financially embarrassed at the present time. * * *

"Question: If an active Vice-President of the Company and General Counsel of the Company were to tell you that they had already charged their stock off on income tax return as a 'dead loss', what would you conclude as to the solvency of the company? Answer: I would conclude they were 'broke.'

If the Chairman of the Board of that Company also told me that the common stock had no value and that the preferred stock had no value I would accept his statement as true, and would accept their statement that the company was broke. I would not lend that company any money without endorsement covering that loan."

Without further quoting the evidence, it was shown by one of the directors of the company that the Investment Securities Company is not now "a going concern," not making loans, for which it was organized. We think the evidence is sufficient to support the court's finding of insolvency. In Langham v. Lanier, 7 Tex. Civ. App. 4, 26 S. W. 255, a writ denied, where the assignors in a deed of assignment were unable to pay their debts in the ordinary course of their business, it was held that such inability is, in judgment of law, insolvency.

Finding no reversible error, the case is affirmed.