YELLOW MEDICINE COUNTY BANK *vs.* O. J. TAGLEY *et al.*

Argued May 17, 1894.   Reversed June 1, 1894.

No. 8741.

**Evidence of good faith and want of notice on the purchase of negotiable notes.**

The plaintiff having purchased the negotiable promissory note in suit for a valuable consideration before maturity, *held*, it did not establish its good faith, and want of notice or knowledge of any defenses to the note, so conclusively that the same must be held established as a question of law, but the question of its good faith and want of notice is for the jury.

**Material alteration a question for the jury.**

*Held*, on the evidence in this case, it was a question for the jury whether a material alteration was made in the note, without the consent of the makers, after it was made and delivered.

**Laws 1883, ch. 114, construed.**

Where the maker of a negotiable promissory note was induced to sign the same by fraudulent representations as to the nature and effect of the instrument signed, and under the belief that he was signing some other or different negotiable instrument, *held*, in such a case, Laws 1883, ch. 114, does not apply, so as to avoid the note, for such fraudulent representations, in the hands of an innocent purchaser in good faith, before maturity, for value.

**If agent violate instructions, who shall sustain the loss.**

Where several makers of a negotiable promissory note left it with the payee under an agreement that it should not take effect until certain others had signed it also, and, in violation of the agreement, the payee indorsed and disposed of it, *held* this is no defense against an innocent holder in good faith, for value, before maturity.

**Other rulings.**

Other rulings of the court below considered and disposed of.

Appeal by Yellow Medicine County Bank, from an order of the District Court of Polk County, *Frank Ives*, J., made November 2, 1893, denying its motion for a new trial.

The plaintiff alleged that at Erskine on February 16, 1891, the defendants, O. J. Tagley and thirteen others, farmers in the vicinity, made and delivered to Clancy Bros. their negotiable promissory note for $800 and interest due April 1, 1892; that Clancy Bros. sold and indorsed the note before maturity to the plaintiff, that plaintiff bought it in good faith in the due course of business, that only $200 had been paid thereon, and he asked judgment for the amount unpaid. Clancy Bros. did not defend, but the fourteen makers interposed a general denial and further answered that in February, 1891, they each agreed with the agent of Clancy Bros. to subscribe for one share of stock in a corporation, called the Erskine Horse Company, organized to purchase and manage a stallion to be bought of Clancy Bros. That the agent represented that there were to be twenty three shares of the stock of $100 each, that they were to be paid for in three equal annual payments and that all the shares must be taken before the subscription would be valid. That they were each and all unable to read English and on the day of the date of the note the agent falsely represented to them severally and they each believed, that all the shares had been taken and that they were induced thereby to sign the note in suit and two others. That the agent stated to each signer that the notes were for $33.33 each and due in one, two and three years, that defendants severally relied on these representations and were not negligent in the premises, that the note in suit was afterwards altered by inserting in it words and figures not in it when it was signed, and they asked judgment that plaintiff take nothing.

The issues were tried March 9, 1893. What occurred at the trial is sufficiently stated in the opinion. Defendants had a verdict. Plaintiff moved for a new trial. Being denied it appeals. The discussion here was upon the evidence.

*A. A. Miller*, for appellant.

*H. Steenerson*, for respondents.

CANTY, J. During the first part of February, 1891, the defendants Clancy Bros., through their agents, organized an association among the farmers of Polk county for the purpose of selling to this associa-

tion a stud horse. These agents were Shannon and Soderberg, who went around among the farmers, and procured the other defendants herein, and some others, to sign some agreement, written in a book, to the effect that each signer would take one share in the horse, and that there should be twenty three shares, of $100 each, which should be the price of the horse, but that the contract should not take effect until the twenty three shares were signed; that afterwards these agents claimed that they had procured signers for all of the twenty three shares, and all of said other defendants, except two, met the agents at Erskine, on February 16th, to make further arrangements.

The note in suit, and two others, amounting in all to $2,300, were then signed by these defendants, and shortly afterwards by the other two. These notes so made and delivered to Clancy Bros. were on February 28th sold, indorsed, and delivered by them to plaintiff. The note in suit is for $800, and was due on April 1, 1892. The defendants Clancy Bros., who were sued on their indorsement, failed to answer. The other fourteen defendants sued as makers of the note, answered, and on the trial had a verdict. From an order denying its motion for a new trial, plaintiff appeals.

On the trial these fourteen respondents offered evidence tending to prove that only three of them could read English; that Shannon and Soderberg represented to them that the three notes then presented to them to be signed were to be signed by each of the twenty-three shareholders, except one or two, who were to pay their shares in cash, and that by the terms of each note each signer severally agreed to pay $33.33, and no more, the three notes constituting an agreement on the part of each to pay $100 for his share, in equal annual installments of $33.33 each; that they supposed they were signing such notes, and would not otherwise have signed them. Most all of these respondents testified that the figures "$33.33" were on the face of the note in suit, and that the figures "$800.00" were not; that the notes so signed were two or three inches longer, and some wider, than the note in suit. And some of those who could read English also testified that $800 was not written in the note, in either words or figures. This was not contradicted, except by cross-examination to the effect that the note in suit now showed no sign of

erasures or change, and each of the respondents admitted that his signature is on the note.

The plaintiff offered evidence tending to prove that it purchased the notes in good faith, for a valuable consideration, before maturity.

1. Under all the circumstances of the case, we are of the opinion that the question of plaintiff's good faith and want of notice or knowledge of any defense to the note was a question for the jury, and the court below did not err in so leaving it. We will not attempt to recite these circumstances. Many of them may be slight. But there are, in our opinion, enough of them, to which the jury had a right to give more or less weight, and from them infer want of good faith on the part of plaintiff notwithstanding the evidence on its behalf tending to prove good faith.

2. We are also of the opinion that there was sufficient evidence from which the jury might find that the note was altered after its execution in a material respect, so as to avoid it in the hands of an innocent purchaser.

3. We are also of the opinion that if the note is not a forgery, by reason of any such material alteration, and the plaintiff is an innocent purchaser, in good faith, for value, Laws 1883, ch. 114, does not apply, so as to avoid the note in the hands of such an innocent purchaser before maturity, because of fraudulent representations as to the nature or effect of the contract signed.

This statute applies only when the party believes that he is not signing a negotiable instrument at all, and seems to be an adoption, with some modification, of the doctrine discussed in the cases of *Mackey* v. *Peterson*, 29 Minn. 298, (13 N. W. 132,) decided shortly prior to the passage of this law, and of which doctrine *Foster* v. *Mackinnon*, L. R. 4 C. P. 704, is the leading case.

The court below charged the jury that this statute did apply, and that, if the signing of the note was procured by such fraudulent representations as to its nature and effect, it would avoid the note in the hands of such innocent purchaser. This was error, for which the order denying the motion for a new trial will have to be reversed.

4. The court refused plaintiff's ninth request, to charge the jury to the effect that if the respondents intrusted the note to Clancy Bros., or their agent, under an agreement that they should procure other

signers to the note before it should take effect, this is no defense against an innocent holder for value, without notice. This, also, was error. See *Ward* v. *Johnson*, 51 Minn. 480, (53 N. W. 766.)

5. The court also admitted evidence of the size of the respondents' farms, number of acres in wheat, amount of stock, and that some of them had no horses,—had only a yoke of oxen. This evidence was not competent for any purpose in the case, and may have been prejudicial. Evidence of the want of means or ability to pay large notes might be competent on the question of the plaintiff's good faith in purchasing the notes, but this was not such evidence. It seemed to have been offered on the theory that the jury had a right to infer from it that men with small farms and little stock would not be likely to undertake to pay so much, if they knew they were doing so.

These are all the errors we find in the record.

Order reversed, and a new trial granted.

Buck, J., absent, sick, took no part.

(Opinion published 59 N. W. 486.)