NICK DREW v. W. P. WHEELIHAN.

December 21, 1898.

Nos. 11,330—(152).

**Purchase of Bank Check—Evidence of Bad Faith.**

Bad faith in the purchase, for value, of an invalid and void bank check, may be partly evidenced by the gross negligence of the purchaser. It may also be shown by a variety of circumstances, some of them slight in character and others of greater significance.

**Same—Question for Jury.**

*Held*, in the case at bar, that the question of plaintiff's good or bad faith when purchasing the check in question was for the jury on the evidence.

Action in the municipal court of Duluth to recover $400 upon a bank check for that amount, drawn by defendant upon the First National Bank of Grand Rapids, Wisconsin, and dated July 16, 1897. The other facts are stated in the opinion. The cause was tried before Edson, J., and a jury, which rendered a verdict for defendant. From a judgment in favor of defendant, plaintiff appealed. Affirmed.

*Windom & McMahon*, for appellant.

The check in question was offered and received in evidence on the trial, together with the indorsements thereon, thereby making a case for plaintiff in the absence of a valid defense. Merchants & Mechanics Sav. Bk. v. Cross, 65 Minn. 154; G. S. 1894, § 5751. If defendant fails to show plaintiff's knowledge of the defense to the

check at the time that he cashed the same, or to controvert the plaintiff's proof of bona fides, then the plaintiff is entitled to have a verdict directed in his favor. Collins v. McDowell, 65 Minn. 110; Drovers v. Potvin, 116 Mich. 474; Borden v. Clark, 26 Mich. 410; Rosemond v. Graham, 54 Minn. 323; 2 Thompson, Trials, § 2262.

The fact of the bank's indorsement upon the back of the check, with the same scratched off, would not tend to put plaintiff on inquiry. Collins v. McDowell, supra. The fact that one purchased a note under such circumstances as to induce suspicion that the title of the prior holder was defective, is not sufficient to show bad faith on his part in making the purchase. Brown v. Tourtelotte, 24 Colo. 204.

A bona fide holder is one who has taken the bill, note or check, without notice of any defense of which the defendant could avail himself in an action by a prior holder of the paper. Bigelow, B. & N. 437. Plaintiff cannot be affected with notice of other dealings of the defendant than those immediately connected with the contract sued upon. Bottomley v. Goldsmith, 36 Mich. 28; Moorehead v. Gilmore, 77 Pa. St. 118; Freeman v. Savery, 127 Mass. 75.

Gross negligence, when not disclosing bad faith, is not sufficient to admit equities against an indorsee for value. Bigelow, B. & N. 439; Collins v. Gilbert, 94 U. S. 753; Brown v. Spofford, 95 U. S. 474; Farrell v. Lovett, 68 Me. 326; Seybel v. National, 54 N. Y. 288; Belmont v. Hoge, 35 N. Y. 65; Smith v. Livingston, 111 Mass. 342; Freeman v. Savery, supra; Crosby v. Grant, 36 N. H. 273; Hamilton v. Vought, 34 N. J. L. 187; Lake v. Reed, 29 Iowa, 258; Gage v. Sharp, 24 Iowa, 15; Hamilton v. Marks, 63 Mo. 167; Moorehead v. Gilmore, supra; Johnson v. Way, 27 Ohio, 374; Shreeves v. Allen, 79 Ill. 553; Howry v. Eppinger, 34 Mich. 29; Commercial v. First, 30 Md. 11; Woolfolk v. Bank, 10 Bush, 504.

The true question for the jury is not whether there were suspicious circumstances, but whether the holder took the paper without notice of any infirmity or taint. Smith v. Livingston, supra; Phelan v. Moss, 67 Pa. St. 59; Moorehead v. Gilmore, supra; Hamilton v. Vought, supra; Lake v. Reed, supra; Johnson v. Way, supra; Hamilton v. Marks, supra; Collins v. Gilbert, supra;

Brown v. Spofford, supra; Shreeves v. Allen, supra; Howry v. Eppinger, supra; Commercial v. First, supra.

Mere knowledge of facts that would lead a prudent man to inquiry is not sufficient to defeat an indorsee for value. Jones v. Gordon, L. R. 2 App. Cas. 616; Woolfolk v. Bank, supra; .Freeman v. Savery, supra. There must be something amounting to bad faith in the holder, such as a fraudulent turning away from a knowledge of facts, or a wilful blindness, before he will be affected with notice. Knight v. Pugh, 4 W. & S. 445; Fletcher v. Gushee, 32 Me. 587; Ellicott v. Martin, 6 Md. 509; Ross v. Bedell, 5 Duer, 462; Sloan v. Union, 67 Pa. St. 470; Heath v. Silverthorn, 39 Wis. 146.

*James A. Hanks,* for respondent.

Where there is fraud or illegality, the presumption is that he who is guilty of it will part with the note thereby acquired, for the purpose of enabling some party to recover on it. Such presumption operates against the holder, and suspicion follows the note into his hands and fastens upon his title. Cummings v. Thompson, 18 Minn. 228 (246); Bank of Montreal v. Richter, 55 Minn. 362. See also Vosburgh v. Diefendorf, 119 N. Y. 357; Canajoharie v. Diefendorf, 123 N. Y. 191. Gross negligence, though not of itself sufficient as a matter of law to defeat title, constitutes evidence of bad faith. Seybel v. National, 54 N. Y. 288; 1 Parsons, N. & B. 258; Canajoharie v. Diefendorf, supra. See also Murray v. Lardner, 2 Wall. 110, 121; Dutchess v. Hachfield, 73 N. Y. 226. If the purchaser knows generally that there is something wrong about the paper, it is sufficient to put him on inquiry and affect his title. 4 Am. & Eng. Enc. (2d Ed.) 303. Whether the party had such knowledge or not is a question for the jury. Goodman v. Simonds, 20 How. 343. What is sufficient to arouse suspicion is also a question of fact for the determination of the jury. 4 Am. & Eng. Enc. (2d Ed.) 304; Fowler v. Brantly, 14 Pet. 318; Brown v. Taber, 5 Wend. 566. See also Schmueckle v. Waters, 125 Ind. 265.

COLLINS, J.

Action by an alleged good-faith purchaser, for value, against the maker of a dishonored bank check. For the purposes of this appeal it stands admitted that the check was illegal and void in the hands

of McArthur, the payee, and Smith, one of the indorsers, under the provisions of G. S. 1894, § 6594.

The facts were that almost immediately after the check was signed by defendant at Duluth, it was indorsed by McArthur to Smith. The latter was a business man, residing in Duluth, while defendant was a resident of Grand Rapids, Wisconsin, temporarily in Duluth. Smith at once went to a saloon keeper in the place last mentioned, by the name of Hencke, and got him to go with him to the Commercial Bank in the same city for the purpose of obtaining the money, $400. The officers of the bank refused to cash the paper without Hencke's indorsement. The check was then indorsed by Hencke as demanded, and also by Smith, and the money paid over to Hencke, who refused to turn it over to Smith until the check was sent to Grand Rapids and collected. Thereupon Smith and Hencke returned to the bank, Hencke paid back the $400, and the check was delivered to Smith after Hencke had erased his absolute indorsement, and the bank had erased an indorsement it had made to another bank in Duluth for collection (upon which it had become liable). Smith forthwith went to West Superior, in the state of Wisconsin, and called upon Drew, the plaintiff, who was in the saloon business, and then proposed to the latter that if he would cash the check he (Smith) would "buy a drink." Another person who had been present when defendant signed the check, and who knew of its invalidity, seems to have been in the saloon at the time, about 3 o'clock of the afternoon of the day on which the check was drawn.

From plaintiff's testimony it seems that he looked at the face of the check, remarked that it was a large one, then looked at the back, saw the erased indorsements before mentioned, and asked what they were, and if the check had not been returned by the bank. To this inquiry Smith answered that he had previously turned the check over to Hencke; that the latter had received the money, but wanted to retain it until the bank collected the check; that he (Smith) needed the money, so he had obtained the check from Hencke, and had brought it to plaintiff to be cashed. The latter testified that he did not then know anything about the maker of the paper, nor about McArthur, the payee, nor did he know

where Grand Rapids was, except that it was in the southern part of Wisconsin; and that he had previously cashed checks for Smith, with whom he had been acquainted about seven years.

Plaintiff admitted that he had at his saloon telephone communication with Hencke and the Commercial Bank at Duluth, seven miles distant; that he knew there were several banks in that city, as well as in West Superior. Immediately after cashing the check, and, of course, during banking hours, plaintiff went in person to the bank in the last-named city where he kept his account and transacted his business, and there indorsed and left the check for collection, not for deposit on account. Meantime payment had been stopped, and hence this action.

The illegality of the check being admitted on this appeal, the cause must be disposed of precisely as if the admission had been made at the trial. Therefore the burden of proof was on plaintiff to establish his good faith when taking the instrument. The presumption was against him, and it was incumbent upon him to overcome it. Bank of Montreal v. Richter, 55 Minn. 362, 57 N. W. 61.

But the plaintiff was entitled to protection as an innocent purchaser, unless he had knowledge or notice of such facts that his failure to make inquiry, when taking the check, amounted to bad faith. Collins v. McDowell, 65 Minn. 110, 67 N. W. 845. Gross negligence, although not of itself sufficient, as a question of law, to defeat title, constitutes evidence of bad faith. Canajoharie v. Diefendorf, 123 N. Y. 191, 25 N. E. 402.

As was stated in Murray v. Lardner, 2 Wall. 121, the rule may be said to resolve itself into a question of honesty or dishonesty, for guilty knowledge and wilful ignorance alike invoke the result of bad faith. And bad faith in one of these transactions is based upon a variety of circumstances, some of them slight in character, and others of greater significance. Dutchess v. Hachfield, 73 N. Y. 226.

A reputable banking house might discount or purchase an invalid check, presented to it by a man of integrity, without being suspected of bad faith; while an individual not engaged in banking, or in any business which would naturally lead him into discounting or purchasing negotiable paper, taking the same check from an

irresponsible party, and under peculiar circumstances, might easily be suspected of having directly or impliedly connived at wrong, or, at least, that he was not unwilling to close his eyes and ears when taking the paper, so that he might not ascertain its real character.

Whether a purchaser has notice or knowledge of the invalidity of the paper, or has means of knowledge which he wilfully disregards, is usually a question for a jury, not for a court. See Yellow Medicine Co. Bk. v. Tagley, 57 Minn. 391, 59 N. W. 486.

It is claimed here by counsel for plaintiff that at the trial the presumption of knowledge in plaintiff was rebutted and entirely overthrown, and that by the evidence it was conclusively shown that he was an innocent purchaser, and entitled to a verdict. We cannot concur in this view.

While the testimony on which the verdict for defendant is rested is not very convincing, we are of the opinion that it was sufficient. And in saying this we are not unmindful of the fact that both plaintiff and Smith asserted under oath, and in the most positive manner, that the former exchanged his money for this check in the utmost good faith, without the slightest suspicion of its bad character, and in the absence of all circumstances which would or should arouse his suspicion.

Plaintiff was not a banker, nor was he engaged, remotely or otherwise, in the banking business. He was a saloon keeper. True, he had, according to the evidence, cashed checks for Smith on previous occasions. How large does not appear, but evidently this was for a much larger sum than any check which had previously been presented, so large, in fact, that it would seem somewhat remarkable that Smith would expect plaintiff to cash it.

Smith resided in Duluth, seven miles distant, in which city there were several banks, and plaintiff knew that the check, although dated at Grand Rapids, had been executed in Duluth that day, and had there passed by indorsement into Smith's hands. There was no direct evidence as to Smith's character, or business standing, or what plaintiff knew of him, but, in passing, it may be observed that the Duluth bank would not cash the check with his indorsement only, but required Hencke's, and when the money was paid over to the latter he refused to allow it to go into Smith's possession until

the check, which he had indorsed at Smith's solicitation, had been collected by the bank.

From this it is apparent that a banking institution in Smith's home town, and also one of his personal friends in the same place, notwithstanding his pressing need for ready money, had declined to allow the amount of the check to go out of their hands upon his indorsement alone. This tended to show that Smith was lacking either in means or integrity or both. More than this, although needing the money, Smith failed to call upon any other Duluth bank, but went out of the state to West Superior. And then, instead of presenting the check to a bank for discount, as we might reasonably expect of a business man who had formerly resided in that city, he appeared at a saloon, during banking hours, and proposed to the saloon keeper that he would buy a drink if he would cash the paper. This of itself was not an ordinary transaction. But plaintiff examined the check, which was drawn on a bank in a distant part of the state by a total stranger to him, and had on its back two recently erased indorsements,—one absolute (that of Hencke); the other for collection (that of the bank). He was also told by Smith that the money had been obtained at the bank, but that Hencke had refused to let it go out of his own hands until the check had been collected. Without a word of further inquiry, and with the means at hand for obtaining some information in respect to the paper, plaintiff went away from his place of business,— where was not shown,—procured the money, turned it over to Smith, and with great promptness took the check to the bank with which he did business, and there left it for collection.

It cannot be said that any particular one of these circumstances was sufficient of itself to warrant a finding of plaintiff's bad faith, but, taking them all together, some of them of slight significance, but others of more importance, we are compelled to hold that it was a case for the jury, and that their verdict against plaintiff cannot be disturbed on this point. These circumstances could well be considered by the jury when passing upon the testimony of plaintiff and Smith as to the bona fide character of the transaction. See Schwartz v. Germania L. Ins. Co., 21 Minn. 215; Hawkins v.

Sauby, 48 Minn. 69, 50 N. W. 1015; Merchants Nat. Bk. v. Sullivan, 63 Minn. 468, 65 N. W. 924.

Plaintiff's counsel have relied with much confidence on Collins v. McDowell, supra, but an examination of the facts in that case will show that those now before us are altogether different.

Judgment affirmed.