# BJARNE OLSEN v. GREAT NORTHERN RAILWAY COMPANY AND OTHERS.[1]

February 8, 1918.

No. 20,723.

**Owner of chattels estopped from claiming title against innocent buyer.**

Where the true owner of personal property allows another to appear as the owner of, and as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, the owner thereof will be estopped from questioning the title of such innocent purchaser to such property.

Action in replevin in the municipal court of Minneapolis. The case was tried before Bardwell, J., who made findings and dismissed the action. From an order denying his motion to amend the findings or for a new trial, plaintiff appealed. Reversed.

*J. E. Brill, G. E. Bauers* and *Arthur F. Weller,* for appellant.

*Walter Holsinger* and *Lew C. Church,* for respondent.

QUINN, J.

This is an action in replevin brought in the municipal court of Minneapolis against the defendant railway company to recover possession of a carload of potatoes on its track at the Minneapolis Transfer. Subsequently, upon motion of the railway company stating that it had no interest in the property, and asking that Elmer Rand and the Gamble-Robinson Company be interpleaded and made parties defendant, an order to that effect was duly made. The case was tried to the court without a jury, which resulted in findings that the plaintiff was not the owner or entitled to the possession of the property, but that the defendent Rand was the owner and entitled to the possession thereof. From an order refusing to amend the findings and denying his motion for a new trial the plaintiff appealed.

[1]Reported in 166 N. W. 331.

In November, 1915, the defendant Rand was conducting a boarding stable in the city of Minneapolis and kept horses for hire. One Dusenbery had used Rand's teams in unloading and peddling potatoes. Gamble-Robinson Company were wholesalers in the vegetable line and H. A. Hopkins was their manager. Dusenbery had entered into a arrangement with Rand whereby Rand had agreed to furnish the money with which to buy potatoes, and Dusenbery, using Rand's teams, was to peddle them. Thereafter, with Rand's knowledge, Dusenbery went to the office of the Gamble-Robinson Company and talked with Hopkins about buying a carload of potatoes. Hopkins gave him the number of several cars which they had on track at the transfer. After looking the potatoes over Dusenbery returned to the Gamble-Robinson Company's office and entered into an arrangement for the purchase of one car of potatoes at 42 cents per bushel, but, when he came to settle for the same, he did not have the money. Hopkins refused to sell unless the potatoes were paid for, and Dusenbery asked him to hold the matter open until morning; that he had a party who had been putting up some money for him and that he would come back with him. On the following morning, November 9, 1915, Rand, Dusenbery and a tall man who was to help in handling the potatoes, went to the Gamble-Robinson Company's office. As they entered Dusenbery said to Mr. Hopkins that he was ready to settle for the potatoes, or words to that effect. Hopkins then had a delivery order prepared, and while the same was being made out Rand and Hopkins discussed the prospects of the potato market. Dusenbery had given Rand $50 in currency. Rand then paid Hopkins $50 in cash, and gave him a check for $285, the purchase price of the potatoes. Hopkins asked to whom he should give the delivery order, and in Rand's presence, Dusenbery said: "You had better * * * give it to me." The parties then left the office, Dusenbery taking with him the order for delivery of the car of potatoes. Two days later the Gambe-Robinson Company delivered the bill of lading to the tall man who was to assist in handling the potatoes and who was present at the time the potatoes were paid for. On November 11, Dusenbery called upon plaintiff Olsen, and told him he had a car of nice potatoes on the team track of the Great Northern which he would like to sell. After examining the potatoes Olsen bought them from Dusenbery at 35 cents

per bushel, Dusenbery delivering to Olsen the bill of lading with the delivery order. After looking at the bill of lading, Olsen called up the Gamble-Robinson Company and inquired of Mr. Hopkins if it was a good car of potatoes. Olsen then stated to Dusenbery that he would give him a check the following morning in payment for the same, but Dusenbery stated that he wished to use the money that evening, whereupon Olsen again called up the Gamble-Robinson Company and asked Mr. Hopkins to whom he had sold that car of potatoes. He was informed that they had been sold to Dusenbery. Olsen then gave Dusenbery a check for the amount asked for the potatoes. The next morning Rand, having learned that the car of potatoes had been sold, called upon Olsen for the purpose of having payment on the check stopped, but upon inquiry at the bank it was learned that the check had already been cashed. Olsen then called upon the railway company for the delivery of the potatoes, which was refused. He then brought this action to recover possession of the same.

There is no controversy over the facts leading up to the sale of the potatoes to Olsen. It is the contention of the plaintiff that Rand, through his acts and conduct, clothed Dusenbery with every appearance of title to the potatoes short of an absolute bill of sale, and that he is now estopped from questioning Dusenbery's authority to sell the same. Rand testified that he agreed to furnish the money with which to buy the potatoes, that Dusenbery was to peddle them, using Rand's teams. for the purpose, and that Dusenbery went to the Gamble-Robinson Company, under his direction, to see if he could buy potatoes. It is undisputed that on November 8 Dusenbery arranged with Hopkins for the carload of potatoes in question at 42 cents per bushel, and that he was to return on the following morning and bring with him a party who would furnish the necessary money. That on the next morning, November 9, Dusenbery and Rand appeared at the office together, and Dusenbery said to Mr. Hopkins that he was ready to settle for the car of potatoes. Hopkins then looked up the car invoice and figured up the amount of the car which was $335. He then directed the cashier to make out the delivery order, Exhibit A. Rand then paid Hopkins $50 in cash and gave him a check for $285. The delivery order was made out to bearer and delivered to Dusenbery, who took the same with

him when he left the office. Rand concedes that the delivery order was handed to and taken by Dusenbery with his consent. Thereafter the car was transferred to the team track of the Great Northern, and on November 11 Dusenbery procured the bill of lading and called upon the plaintiff Olsen, informing him that he had a car of potatoes upon the team track of the Great Northern, which he would like to sell at 40 or 42 cents per bushel. Olsen then examined the car of potatoes and told Dusenbery that 35 cents a bushel was the most he would pay for them. Dusenbery told Olsen that he would let him know in half an hour. Shortly thereafter he returned and delivered the bill of lading, together with the order of delivery to Olsen, and told him he would accept 35 cents for the potatoes. Olsen then called up Mr. Hopkins at the Gamble-Robinson Company's office and inquired as to whom the car of potatoes had been sold, and was informed that they had been sold to Dusenbery. Then Olsen gave Dusenbery a check for the potatoes. On the following morning Mr. Rand learned of the sale of the car of potatoes and he immediately called upon Mr. Olsen in an attempt to stop payment of the check, but upon inquiry at the bank it was found that the check had been cashed.

It is conceded that Mr. Hopkins honestly believed that Dusenbery was the actual purchaser of the potatoes in question, and that he informed Olsen that he had sold the same to Dusenbery. We are of the opinion that the testimony conclusively shows that the defendant Rand, by and through his acts and conduct, clothed Dusenbery with such apparent ownership and possession of the car of potatoes as to justify the plaintiff in dealing with him therefor. Nor does it appear that the plaintiff was in any way negligent in the premises. Before paying for the potatoes he called up the Gamble-Robinson Company and inquired as to whom they had sold them, and was informed by Mr. Hopkins that they had been sold to Dusenbery. It is well settled "that where the true owner holds out another, or allows him to appear, as the owner thereof, or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected." McNeil v. The Tenth National Bank of City of New York, 46 N. Y. 325, 329, 7 Am. Rep. 341; Kiewel v. Tanner, 105 Minn. 50, 117 N. W. 231, 25 L.R.A.(N.S.) 772; Bar-

nard v. Campbell, 55 N. Y. 456, 14 Am. Rep. 289; Nixon v. Brown, 57 N. H. 34.

Under the facts in this case as they appear from the record, the defendant is estopped from questioning the sale of the potatoes, as against the plaintiff Olsen.

Reversed.