# KING CATTLE COMPANY v. I. S. JOSEPH.[1]

## No. 23,831.

## March 28, 1924.

**Negotiability of bonds destroyed.**

1. Bonds which, by reference to the trust deed securing them, expressly made the deed part of the bonds, became subject to its terms. Their negotiability was destroyed by such reference.

**Promise to pay conditional.**

2. The trust deed provided that the trustee and the mortgagor might alter the terms of the deed if it was deemed consistent with the best interests of the bondholders. The promise to pay, contained in the bonds, was subject to this provision and ceased to be unconditional, an essential of negotiability under section 1, Uniform Neg. Inst. Act; section 5813 G. S. 1913.

**Repledge amounted to conversion of bonds.**

3. A broker, who had the bonds for sale to investors, held some of them as collateral to a note he had paid for the issuer of the bonds and separated them from the note and repledged them to secure another debt. This amounted to a conversion of the bonds repledged and the subpledgee got no better title than the broker.

**Facts sufficient to throw suspicion on title of broker who repledged bonds.**

4. The circumstances under which the bonds were taken by the subpledgee were such as to permit the jury to find that suspicion was cast upon the title of the broker, and that a prudent business man would have made inquiry, which, if pursued with reasonable diligence, would have disclosed the infirmity in the broker's title. The jury might also find that defendant was not an innocent purchaser, and that plaintiff was not estopped from recovering the bonds from him.

[1] Reported in 198 N. W. 798, 199 N. W. 437.

## AFTER REARGUMENT.

### June 20, 1924.

**When negotiability of bond is not destroyed.**

5. A statement of the transaction which gave rise to an instrument negotiable in form does not destroy its negotiability if the statement amounts to nothing more than a mere reference to the transaction or to some .other instrument.

**When its negotiability is destroyed.**

6. A reference in a note or bond to a mortgage or deed of trust given as security does not destroy the negotiability of the instrument unless it appears to have been the purpose of the parties to burden the instrument with the conditions of the mortgage or deed. If the reference is of such a nature as to subject the paper to the terms of an extrinsic agreement and to impress them upon it, its negotiability is destroyed.

**When purchaser does not acquire right of holder in due course.**

7. A purchaser of a note or bond does not acquire the rights of a holder in due course unless the instrument is complete and regular upon its face. When the language of a bond not only refers to the provisions of the trust deed securing it, but makes the bond subordinate to the conditions of the deed, the bond shows upon its face that it is not a complete and regular instrument.

**Negotiability established by tests contained in Negotiable Instruments Act.**

8. Whether a particular note or bond is negotiable is a question to be determined by consulting the Negotiable Instruments Act, which prescribes the tests to which an instrument must be submitted when it is presented for admission to the class of negotiable paper, and proof of the existence in the business world of a custom under which the particular instrument, is generally treated as negotiable is not admissible under section 6008, G. S. 1913 (section 196, Uniform Neg. Inst. Act).

Action in the district court for Hennepin county to recover possession of 20 debenture bonds or for $10,000, the value thereof. The case was tried before Molyneaux, J., who denied plaintiff's motion for a directed verdict and granted a similar motion by de-

fendant. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Reversed.

*Edward Nelson* and *Einar Hoidale*, for appellant.

*Cobb, Wheelwright, Hoke & Benson*, for respondent.

LEES, C.

Action to recover possession of 20 bonds issued by plaintiff and held by defendant. The court directed the jury to return a verdict in defendant's favor. Plaintiff has appealed from an order denying its alternative motion for judgment or a new trial.

On January 29, 1921, plaintiff's president, R. S. Nutt, gave his note for $12,000 to Slimmer & Thomas for money borrowed for plaintiff, depositing 40 bonds and a certificate for 750 shares of stock in the plaintiff company as collateral security. The note was payable 30 days after date. At some time not shown by the evidence, the words "Due Feb. 28, 1921. Extended one year to Feb. 27, 1922" were written upon the face of the note. It was indorsed and payment guaranteed by Stevens & Company, a corporation to whom plaintiff had delivered a large number of its bonds for sale to investors. Nutt failed to pay the note. It was paid by the company and subsequently the collateral was delivered to one of its officers. He pledged 20 of the bonds to the Union State Bank of Minneapolis to secure his personal note. Later Stevens & Company pledged Nutt's note to the same bank, and still later it pledged the remaining bonds to the Northern State Bank of Minneapolis.

Defendant was a small stockholder in Stevens & Company. He testified that on a Sunday in March, 1922, he was called to the company's office and informed that the Northern State Bank held the company's note for $11,200, with collateral amounting to $13,000; that unless the note was paid in the morning of the following day the bank would be closed, and that the company could not pay it; that he was asked to advance the money, with the assurance that he would be repaid within two or three days; that he did advance it in the morning of the following day, receiving from the company its demand note and the 20 bonds involved in this action. The note was not paid, the company going into the hands of a receiver in

April, 1922.   Defendant's claim to the bonds is based on this transaction.

The points discussed in the briefs and oral argument are:  (1) Were the bonds negotiable?   (2) If so, did the defendant take them under such circumstances as to become a holder in due course?   (3) Is the plaintiff estopped from claiming them?

The bonds contain a clause which, in our opinion, destroys their negotiability.   It reads thus:

"All of which bonds have been issued, or are to be issued, under and in pursuance of, and are all equally secured by, and are subject to an indenture of mortgage or deed of trust, dated September fifteenth, 1920, duly executed by the company to said Yellowstone Bank and Trust Company, of Sidney, Montana, as trustee, under which indenture all of the property of the company, real, personal and mixed, now owned or hereafter acquired, has been transferred and mortgaged to said trustee and hereby reference is made to said indenture and the same made a part hereof, with the same effect as if herein fully set forth."

The mere fact that the bonds were secured by the deed did not change their character or affect their negotiability.   Blumenthal v. Jassoy, 29 Minn. 177, 12 N. W. 517.   2 Fletcher, Cyc. Corp. § 1011. They are deprived of negotiability because the deed is expressly made part of them.   It is as though its contents were repeated in them.   Short v. Van Dyke, 50 Minn. 286, 289, 52 N. W. 643.   Negotiable paper enters the channels of commerce.   It is a medium of exchange in the business world.   To circulate freely, it must be "a courier without luggage."   Here, there was "luggage," a trust deed of 89 typewritten pages incorporated in the bonds.

In Hastings v. Thompson, 54 Minn. 184, 55 N. W. 968, 21 L. R. A. 178, 40 Am. St. 315, it was said that commercial usages have played a large part in shaping the law of negotiable instruments, and in Cudahy Packing Co. v. State Nat. Bank, 134 Fed. 538, 67 C. C. A. 662, that whenever a new instrument, varying in some feature from the ordinary bill or note, is presented for admission to the class of negotiable paper, the courts should inquire whether it has

been the general practice of the business world to treat the instrument as negotiable and, if it has, it should be admitted. We do not know how the business world regards bonds like these, but it would seem that under the most liberal application of the rules for determining the negotiability of an instrument, it cannot be held that they are negotiable.

In Klots Throwing Co. v. Mnfrs. Com. Co. 179 Fed. 813, 103 C. C. A. 305, 30 L. R. A. (N. S.) 40, Brooke v. Struthers, 110 Mich. 562, 68 N. W. 272, 35 L. R. A. 536, and the cases cited in the notes to Continental Bank v. Times Co. L. R. A. 1918B, 632, and to Strand Amusement Co. v. Fox, 14 A. L. R. 1121, it was held that the negotiability of an instrument is destroyed where, as here, there is a reference to some extrinsic contract in such a way as to make the instrument subject to the terms of that contract.

Defendant relies on Guilford v. Minneapolis, S. S. M. & A. Ry. Co. 48 Minn. 560, 51 N. W. 658, 31 Am. St. 694, explained in Grant v. Winona & S. W. Ry. Co. 85 Minn. 422, 89 N. W. 60, where the court said that the mere recital that bonds were secured by a trust deed did not affect their negotiability. But plaintiff's bonds do not stop with a reference to the deed; they incorporate the deed bodily and, as remarked in the Guilford case, purchasers of such bonds take them subject to the provisions of the deed.

A clause in the trust deed reads thus:

"The trustee is hereby empowered to join the mortgagor in modifying, amending, altering or supplementing this indenture, in its absolute discretion, if it shall deem that the same is consistent with the best interests of the bondholders."

This put it within the power of the trustee and the plaintiff to change the terms of the bonds by altering those of the deed. The promise to pay at a fixed time is not unconditional as required by section 5813, G. S. 1913 (Section 1, Uniform Neg. Inst. Act).

It is unnecessary to consider whether defendant took the bonds under such circumstances as to give him the rights of a holder in due course. Lacking negotiability, they were mere choses in action and he took only such title as Stevens & Company could give.

Stevens & Company stood in the shoes of Slimmer & Thomas. It had the right to hold the bonds until the Nutt note was paid. If it transferred the note, the bonds would follow it. A pledgee cannot separate the collateral from the debt, because his interest is not a distinct property right capable of being transferred independently. He has a special property in the collateral only by reason of his ownership of the debt; the general property remains in the pledgor. Van Eman v. Stanchfield, 13 Minn. 70 (75); White v. Phelps, 14 Minn. 21 (27), 100 Am. Dec. 190; Norton v. Baxter, 41 Minn. 146, 42 N. W. 865, 4 L. R. A. 305, 16 Am. St. 679; Hershey v. Welch, 96 Minn. 145, 104 N. W. 821; Jones, Col. §§ 418, 419; 21 R. C. L. 649. He holds the collateral in trust, first to apply the proceeds thereof to the payment of the debt, and second, when the debt is satisfied, to restore it or what remains to the debtor or his assigns. Jones, Col. § 393. It is his duty to keep control of the collateral so as to be ready to return it whenever he receives payment of the debt. If he puts it beyond his control, he is guilty of conversion. Upham v. Barbour, 65 Minn. 364, 68 N. W. 42. The case of a broker purchasing stocks or bonds for his client and holding them as security for advances made may be an exception to the rule. Jones, Col. §§ 495, 507; Turner v. Schwartz, 140 Md. 465, 117 Atl. 904, 24 A. L. R. 444. The conclusion follows that when Stevens & Company pledged the Nutt note and half of the bonds to one bank and the other half of the bonds to another bank as security for a total indebtedness in excess of $12,000, it was guilty of a conversion of the bonds claimed by the defendant, whose case is no better than the company's would be.

There is a well-known exception to the rule that the vendor of property other than negotiable securities can give no greater right or title than he has. If the true owner clothes another with the appearance of ownership, or as having full power of disposition over the property, an innocent third party who is thus led into dealing with such apparent owner will be protected. Armstrong v. Freimuth, 78 Minn. 94, 80 N. W. 862; Schumacher v. Greene C. C. Co. 117 Minn. 124, 134 N. W. 510, 38 L. R. A. (N. S.) 180, Ann. Cas. 1913C, 1115; Olsen v. Great North. Ry. Co. 139 Minn. 316, 166 N.

W. 331; Cardozo v. Fawcett, supra page 60, 196 N. W. 809; Cowdrey v. Vandenburgh, 101 U. S. 572, 25 L. ed. 923; National Safe Deposit, S. & F. Co. v. Hibbs, 229 U. S. 391, 33 Sup. Ct. 818, 57 L. ed. 1241.

Is plaintiff estopped from questioning defendant's title? Defendant got the bonds and Stevens & Company's note from the state bank examiner at 8:30 o'clock in the morning after the Sunday meeting at the company's office. He gave his check to the bank examiner. He counted the bonds but did not examine them. If he had, he would have discovered that three interest coupons were overdue, a circumstance of some, although perhaps not of controlling, importance. Lumpkin v. Lutgens, 143 Minn. 139, 172 N. W. 893. 2 Fletcher, Cyc. Corp. § 1021. He knew that the company had plaintiff's bonds for sale. He made no inquiry to ascertain whether the bonds belonged to the company or how they came into the hands of the bank examiner. The bonds were payable to bearer. Nutt had pledged some of them. They came into the rightful possession of Stevens & Company. Plaintiff took no steps to regain possession. These are the acts and omissions upon which an estoppel arises, if it arises at all.

To avail himself of an estoppel, defendant must be an innocent purchaser. An innocent purchaser of property in general is one who acquires it by an honest agreement without knowledge or means of knowledge sufficient to charge him in law with notice of an infirmity or flaw in the title of the seller. 4 Words & Phrases, 3629. Whether one was such a purchaser, or has taken the property of another in good faith, depends upon a variety of circumstances and is usually a question for the jury. Bank of Farmington v. Ellis, 30 Minn. 270, 15 N. W. 243; Drew v. Wheelihan, 75 Minn. 68, 77 N. W. 558; Marotta v. Duluth News Tribune, 116 Minn. 51, 133 N. W. 89. There was no proof of actual knowledge of the infirmity in the title of Stevens & Company. Were the circumstances under which the bonds were offered to defendant such as to cast suspicion on the title and lead a prudent man to make inquiries which would have disclosed the true state of facts? This is the test by which to determine whether defendant enjoys the privileges of a good

faith purchaser. Northern Trust Co. v. Consolidated Elev. Co. 142 Minn. 132, 171 N. W. 265, 4 A. L. R. 510. Defendant may have been ignorant of the true state of affairs, but ignorance due to negligence is the equivalent of notice, and want of notice is an essential element of bona fides, as that term is used in equity jurisprudence. Tolbert v. Horton, 31 Minn. 518, 521, 18 N. W. 647. One may not stop his ears and shut his eyes and then say he neither heard nor saw anything to put him upon inquiry, or, as was said in Ludowese v. Amidon, 124 Minn. 288, 295, 144 N. W. 965, a failure to make inquiry may be regarded as an intentional avoidance of the truth which it would have disclosed. The transaction was out of the ordinary if it took place just as defendant related it. Here was a corporation, supposed to be sound and solvent, urging a small stockholder to hasten to its aid because a bank carrying some of its paper would be closed if the paper was not taken up immediately. Men of business experience know that hard-pressed debtors turn sharp corners and are not scrupulous to distinguish between their own and the property of others entrusted to their keeping. When, as security for an accommodation, such a debtor offers paper he is selling for the owner to investors, a man of ordinary prudence should be put on inquiry and might well surmise that the paper did not belong to the person offering it.

The principles applied in Brown v. Equitable Life Assur. Soc. 75 Minn. 412, 78 N. W. 103, 671, 79 N. W. 968, Cardozo v. Fawcett, supra, and Austin v. Hayden, 171 Mich. 38, 137 N. W. 317, Ann. Cas. 1915B, 894, are applicable here and lead to the conclusion that the question of estoppel was for the jury.

The order denying a new trial is reversed and a new trial granted.

AFTER REARGUMENT.

June 20, 1924.

A petition for reargument was granted and, in addition to the briefs of counsel, Lightner and Young, as amici curiae, filed a brief.

LEES, C.

The negotiability of appellant's bonds was one of the principal questions before the court when this appeal was first here. The

bonds have come into the hands of several persons. A number of actions similar to this one are pending and others have been tried and may be appealed. The negotiability of the bonds is an issue in all these cases.

We were asked to reconsider our ruling on that issue and, because of its importance, we directed that the question be reargued and that counsel for the bondholders in the other actions might be heard. We have now had the benefit of a more extended discussion of the question, both orally and in additional briefs submitted by counsel appearing for the parties to this appeal and by counsel appearing amici curiae. We have also had the benefit of the written opinion of Judge Bechhoefer of the district court of Ramsey county in ruling on the identical question in another case.

There are certain broad principles which were part of the law merchant and are now embodied in substance in the Uniform Negotiable Instrument Act in the light of which the question should be examined.

A statement of the transaction which gave rise to an instrument negotiable in form does not destroy its negotiability, if it amounts to nothing more than a mere reference to the transaction or to some other instrument. Section 5815, G. S. 1913 (section 3 Uniform Neg. Inst. Act.); Snelling State Bank v. Clasen, 132 Minn. 404, 157 N. W. 643, 6 A. L. R. 1663; Polk County State Bank v. Walters, 145 Minn. 149, 176 N. W. 496; International Finance Co. v. N. W. Drug Co. 282 Fed. 920.

A reference in a note or bond to some extrinsic agreement, as for example to the mortgage or deed of trust given as security, does not destroy the negotiability of the instrument, unless it appears to have been the purpose of the parties to burden the instrument with the conditions of the mortgage or deed. If the reference is of such a nature as to subject the paper to the terms of the extrinsic agreement and to impress them upon it, its negotiability is destroyed. 3 R. C. L. p. 883; 8 C. J. p. 124; Ann. Un. Neg. Inst. Act, p. 40; Strand Amusement Co. v. Fox, 205 Ala. 183, 87 South 332, 14 A L. R. 1121, and cases collected in the note·

A purchaser of a note or bond does not acquire the rights of a holder in 'due course unless the instrument is complete and regular upon its face, section 5864, G. S. 1913 (section 52 Uniform Neg. Inst. Act), hence when the language of a bond not only refers to the provisions of the trust deed securing it but makes the bond subordinate to the conditions of the deed, the bond shows upon its face that it is not a complete and regular negotiable instrument. A purchaser cannot determine from a mere inspection of the bond that it contains an unconditional promise to pay a sum certain at a fixed or determinable future time, but must examine the deed to ascertain the precise nature of the obligation of the maker of the bond. Hull v. Angus, 60 Ore. 95, 118 Pac. 284.

We see no escape from the conclusion that the language of these bonds goes far beyond a mere reference to the underlying security. The parties evidently intended to incorporate and include the provisions of the trust deed in the bonds. They wrote into them a notice to an intending purchaser that, in determining the nature of the obligation of the maker, he could not stop with a reading of the bonds, but must also read the trust deed, for the conditions of the trust deed were impressed upon them. In one sense the bonds were incomplete, not because they were unfilled blanks or omissions to be supplied, for there were none, but because on their face the bonds carried notice that the entire contract of the parties was not expressed. It was necessary to look to a separate instrument to be certain as to when and how the maker of the bonds could be compelled to pay them. For these reasons we adhere to the former ruling that the bonds are not negotiable.

Counsel for respondent have asked us to modify the order granting a new trial, if it is to stand, by adding that the respondent may introduce evidence showing the existence in the business world of a custom under which bonds such as these are generally treated as negotiable.

Whether a particular note or bond is negotiable is a question to be determined by consulting the Negotiable Instruments Act, which prescribes the tests to which an instrument must be submitted when it is presented for admission to the class of negotiable paper. If

these bonds do not meet these tests they cannot be admitted. This is not a case governed by the law merchant, as provided by section 6008, G. S. 1913 (section 196, Uniform Neg. Inst. Act). It falls within and is covered by the express provisions of the act. If it is desirable that bonds such as these should be admitted to the class of negotiable paper, the desired end may be obtained by securing from the legislature an amendment of the act. But this aside, it is doubtful whether extrinsic evidence should ever be admitted to show that an instrument is negotiable. The evil consequences which would follow are pointedly stated by Judge Booth in International Finance Co. v. N. W. Drug Co. 282 Fed. 920.

We adhere to the views expressed in the original opinion on the question of the negotiablity of these bonds and the case will be remanded for a trial of the other issues.