IDA LORING v. JOHN SWANSON AND OTHERS.[1]

April 11, 1930.

No. 27,736.

[1]Reported in 230 N. W. 277.

*Chester W. Johnson,* for appellants.

*Eugene F. Matthews* and *Frank J. Danz,* for respondent.

WILSON, C. J.

Defendant bank and Swanson appealed from an order denying their motion for a new trial.

Plaintiff was required to give a $7,500 bond for her personal appearance in the federal court. She authorized her attorney, D. W. George, to negotiate for sureties. Mr. George knew defendant Swanson, who was willing to sign the bond for a consideration of $100. Plaintiff owned a home in Minneapolis worth about $4,500, upon which she agreed to give a $1,500 note and mortgage to secure Swanson against loss. She says that the mortgage was not to be recorded unless she absconded or unless she decided to sell the property. George prepared such note and mortgage in the usual

form, naming Swanson as payee. The plaintiff did not read the note and mortgage but executed and delivered them to George to give to Swanson. George has a different version, but the trial court has accepted plaintiff's version.

George delivered the note and mortgage to Swanson but requested him to take them to defendant bank and use them as collateral to his, Swanson's, personal note for $1,200 to the bank, and from the money so received to retain the $100 he, Swanson, was to have and deliver the balance, less interest for three months paid in advance, to George. This was done. George kept the money. It seems that Swanson became an unconscious agency in doing wrong. He apparently thought that George's plan had plaintiff's approval. George told him that the mortgage was to be so used so as to raise money for attorney's fees. Plaintiff never authorized any such use of the note and mortgage and supposed Swanson was to hold them for his own protection.

The bank made the loan to Swanson on July 29, 1926. He renewed his note on October 26, 1926, January 25, 1927, August 2, 1927, and on December 31, 1927. In July, 1928, foreclosure proceedings were instituted.

In August, 1927, plaintiff received a demand from the bank for payment of the $1,500 note and mortgage, and she thereupon wrote the bank advising it of the limited purposes for which said note and mortgage had been given. In the fall of 1926 plaintiff paid George $100 as his attorney's fees, and she also gave George $100 to be paid to Swanson as his bond premium. This George kept. Swanson had been a customer of the bank for about six years. This action to cancel the note and mortgage was commenced on October 27, 1927. The court among other things found:

"That defendant Swanson never inquired of plaintiff as to authority of George in this transaction; that under the peculiar circumstances by which defendant Swanson became the owner and holder of said $1,500 note and mortgage and the peculiar circumstances leading up to the transaction whereby it was delivered to Swanson and by him pledged without knowledge or consent of plaintiff,

placed upon all of the defendants the burden to show that defendant George had authority to do what he did in relation to said note and mortgage, and that defendants have not sustained that burden."

The court directed the entry of judgment canceling the $1,500 note and mortgage.

■ Defendant George did not answer. He defaulted. He made no appearance on the trial of the cause. Yet over objection he was called and cross-examined under the statute. G. S. 1923 (2 Mason, 1927) § 9816. This was error. He was only a nominal party. There was no issue to which he was a party. George had no actual pecuniary interest in the controversy in the pleadings. Suter v. Page, 64 Minn. 444, 67 N. W. 67; Bowler v. Fahey, 136 Minn. 408, 162 N. W. 515. We are however of the opinion that this error is without prejudice. Allen v. Eneroth, 118 Minn. 476, 137 N. W. 16; Garedpy v. C. M. St. P. & P. R. Co. 176 Minn. 331, 223 N. W. 605; Johnson v. C. N. W. Ry. Co. 175 Minn. 197, 220 N. W. 602. There is little if any dispute as to the facts. George's testimony tends to support the claims of defendants. They later called him as their own witness.

■ George was plaintiff's agent authorized to deliver the note and mortgage to Swanson for the definite purpose of partially indemnifying him from loss incident to his suretyship. George failed in his fidelity. He told Swanson that the note and mortgage were to secure him. Swanson then, at the request of George, took the note and mortgage to the bank and hypothecated them as collateral to his own $1,200 note and turned over the money, less $100, to George in compliance with the latter's instructions and statement that money was to be raised in this method in order that plaintiff might have suit money, attorney's fees and expenses. George's statements to Swanson were so inconsistent, unusual and peculiar as to have put him upon inquiry, which he did not make. With the utmost credulity he negotiated the loan, using as collateral the paper which was to be his security, and then supposedly handing the money back to those who were to secure him in his suretyship. It can hardly be said that he was promoting his own interests. He

was George's pawn. He apparently went into the bank and made the loan in the best of faith, disregarding the circumstances which would have made most men suspicious. He, like the plaintiff, misplaced his confidence.

■ The bank knew Swanson. No one charges him with wilful misconduct. He had been a customer of the bank for six or seven years. It made the loan in the usual course of business. It parted with its $1,200. The note was negotiable. The bank's conduct was usual and ordinary. Moler v. State Bank of Bigelow, 176 Minn. 449, 223 N. W. 780, 62 A. L. R. 799. The fact that it acquired the note as collateral only is not important. It acquired the legal title thereto. McCrea v. First Nat. Bank, 162 Minn. 455, 203 N. W. 220. Where a note is accepted as collateral security for a debt at that time created and on the faith thereof, the holder, when the essential elements are present, is a holder in due course. First Nat. Bank v. Bentley, 27 Minn. 87, 6 N. W. 422; St. Paul G. L. Co. v. Village of Sandstone, 73 Minn. 225, 75 N. W. 1050; 8 C. J. 487, § 702; Exchange Nat. Bank v. Coe, 94 Ark. 387, 127 S. W. 453, 31 L.R.A.(N.S.) 287, and note, 21 Ann. Cas. 934. The evidence is conclusive that the bank made its $1,200 loan in good faith, taking the $1,500 note for value as collateral before maturity and without being chargeable with knowledge of its infirmity. It was therefore as a matter of law entitled to hold and enforce the payment of the note. It acquired the $1,500 note under circumstances constituting it a holder in due course. The order for the cancelation of the note was erroneous. As to who is a holder in due course, see G. S. 1923 (2 Mason, 1927) § 7100; King Cattle Co. v. Joseph, 158 Minn. 481, 487, 198 N. W. 798, 199 N. W. 437.

■ The rule is different as to the mortgage securing the payment of the note. It is not negotiable paper. The privileged character of the negotiable note does not extend to the mortgage. First Nat. Bank v. Marshall State Bank, 172 Minn. 571, 216 N. W. 231; Johnson v. Howe, 176 Minn. 287, 223 N. W. 148.

■ The bank claims that because plaintiff executed the note and mortgage in favor of Swanson, and through her agent, George, in-

tentionally put them in the possession of Swanson, she is estopped from subsequently impeaching the integrity of the note and mortgage in the hands of an assignee who has without negligence acquired the same in good faith for value.

It is the settled law that under such circumstances the mortgagor may not assert the invalidity of such note and mortgage against such subsequent holder if he has made express or implied representations as to their validity in the hands of the mortgagee. 41 C. J. 694, § 713; 19 R. C. L. 301, § 75; 353, § 125. Of course such assignee must show that he relied thereon and was thereby induced to act. One cannot deny a state of things which by his culpable silence or misrepresentation he has led another to believe existed and who has acted accordingly upon that belief. See Schaefer v. Nylin, 162 Minn. 170, 202 N. W. 439.

· But does the record disclose such acts of omission or commission on the part of plaintiff as to invoke the general doctrines of estoppel? We must keep in mind that the fruit of these principles in actions of this character does not depend upon actual title but is derived from the conduct of the other party which precludes him from disputing, as against the innocent acting person, the existence of the title or power which through negligence or mistaken confidence he caused or allowed to appear to be vested in the third party. In order that the real owner of personal property may be estopped from asserting his title against a person who has dealt with one in possession on the faith of his apparent ownership, it is the general rule that something more than mere possession and control is necessary. Kiewel v. Tanner, 105 Minn. 50, 117 N. W. 231, 25 L.R.A. (N.S.) 772; Olsen v. G. N. Ry. Co. 139 Minn. 316, 166 N. W. 331; Cardozo v. Fawcett, 158 Minn. 57, 196 N. W. 809; Hayes v. Midland Credit Co. 173 Minn. 554, 218 N. W. 106.

Some authorities hold differently when writings are involved, as here, and say that a party who has signed his name and allowed papers over his own signature to go beyond his control with a transferable quality cannot deny the effect of his own words and actions. But we have declined to follow that rule. Cardozo v. Fawcett, 158 Minn. 57, 196 N. W. 809, wherein for reasons clearly stated we held

that choses in action, and here the mortgage is such, are governed by the same general rule applicable to other personal property. It would be a harsh rule to say that plaintiff should anticipate the unfaithfulness of her agent and attorney or the misconduct of Swanson while having possession of the note and mortgage as his security had he received them as she intended. She acted in good faith. She had no reason to anticipate misconduct on the part of George or Swanson. All that she did was to put the note and mortgage in possession of George with authority to deliver to Swanson. Such conduct is insufficient to effectually invoke the doctrine of estoppel.

Reversed with directions to modify the order for judgment so as not to cancel the $1,500 note.

