## In re INVESTMENT SECURITIES CO. OF TEXAS.

### No. 2922.

District Court, N. D. Texas, Dallas Division.
March 8, 1933.

On Application for Rehearing March 24, 1933.

Goggans & Ritchie, of Dallas, Tex., for trustee.

Coke & Coke, of Dallas, Tex., for First Nat. Bank in Dallas.

McBride, O'Donnell & Hamilton, of Dallas, Tex., for receiver.

Wm. H. Clark, of Dallas, Tex., for interveners.

Dexter Hamilton, of Dallas, Tex., for state court receiver.

John Neethe and Maco Stewart, both of Galveston, Tex., and George Burgess, of Dallas, Tex., for bondholders.

ATWELL, District Judge.

On February 7, 1933, there was filed with the clerk of this court a certificate from the referee in bankruptcy for the Dallas Division, evidencing a desire by W. J. Rutledge, receiver, to review an order made by that official. The cause was set down by this court for argument Saturday, February 18th.

A study of the case discloses that on February 26, 1930, Buck W. Brown brought a suit in the state district court against the Investment Securities Company, and the trustee, First National Bank in Dallas, on a series A bond theretofore issued by the Securities Company, and dated July 13, 1925. Petitioner alleged that he held a bond in the sum of $100, and that there was due on such bond the sum of $3.50, interest. That the trustee held $25,000 in cash, and notes in the sum of $900,000 against the $996,500, in bonds of said issue. That the company was insolvent and unable to pay its creditors. That his rights and interest were identical with the other holders of such bonds. That, "Your petitioner further avers that by reason of the many complex problems presented in the affairs of said corporation, and of the many conflicting interests between bondholders, other creditors, preferred stockholders, and common stockholders of said company, and by reason of the fact that the said defendant company is wholly unable to continue to function as a corporation acting under the management of directors of its own choosing, a necessity is presented for the intervention of a court of equity and for the appointment of a receiver of said defendant company to the end that all of its properties, and the rights of all persons interested may properly be conserved and protected."

There were four divisions of a general prayer for the winding up of the affairs of the company, and a fifth division, which related to series A bonds.

On April 15, 1930, entered as of April 11, the court denied the appointment of a general receiver, but granted the application for the appointment of a receiver for the funds, notes, and properties held by the trustee bank as security for series A bonds. In that judgment it was also held that the exclusive power and right of the bank trustee to enforce the security for the protection of

the bonds was ineffective and void. Between the date of the filing of the suit and the entry of this judgment there were four interveners whose claims aggregated something less than $15,000.

From this judgment the trustee bank appealed. The Court of Civil Appeals for the Fifth District of Texas [34 S.W.(2d) 412] affirmed the order, and the Supreme Court of Texas [53 S.W.(2d) 604] finally dismissed the writ of error application with the statement that it did not have jurisdiction.

In the meantime, on April 16, 1930, the Investment Securities Company was adjudicated a voluntary bankrupt and L. L. Bristol appointed trustee. The trustee bank filed what it called an interpleader with the referee claiming that the state court receiver was pressing it for the property that it held as trustee, and threatening to cite its officers for contempt if it did not comply with the demand. That trustee Bristol, on the other hand, had also demanded of it the moneys and funds that it so held. It advised the court that by diligent operation of the trust it had increased the cash on hand to approximately $230,000, and that the notes and accounts had been so managed as to be conservatively worth enough to make the whole fund approximately a million dollars. It sought protection from the court in the form of a restraining order, alleging that it was willing and ready to turn over the fund to whomsoever it should legally go.

The referee entered a prohibition against the state court receiver and ordered the bank to turn the funds over to the trustee in bankruptcy.

This rough statement indicates the seriousness of the questions involved. After argument the court was of the opinion that it would do no harm, pending the continuing consideration of the record, to allow five days to the trustee in which time he might secure the authority of the referee, an application having been made in that direction, to see what settlements he could make with the litigants in the state court, and with the state court itself.

An order was presented to the court a day or two after such announcement which the court was led to sign, and which was later set aside as not being the order that should have been signed.

There never has been any doubt in the court's mind as to the general principles of law that govern the situation. Brown, having entered the state court on a lien that was given more than four months before the bankruptcy, had a right to pursue that lien to foreclosure. Such suits brought upon liens younger than four months, or after the bankruptcy, are subordinate to the bankruptcy proceedings.

The grave doubt that came into the court's mind was whether, since claimants representing a million dollars of the bonds in issue had filed before the referee, and since some of such claimants were interveners in the state court suit, save approximately $1,500, and since the original suit was manifestly carried forward for the resultant fees, the national court should look through such proceedings and determine whether the action in the state court was in reality a bona fide attempt to foreclose. If the national court has the right to scrutinize a state court suit to discover whether it is an actual attempt to foreclose upon an elder lien, and to determine whether such suit is going forward, then such power of scrutiny might be so broadened and so critical as to discover that really, after all, a suit was not a foreclosure, but was for fees. It was at this point that this court found extreme difficulty. It is manifest, not only by the pleadings, but also by the extraordinary procedure in this particular case by the receiver, that fees are the main spring of the action.

But even though this may be conceded, is it not true that just that thing may be done, and still the national court must not interfere? It would be highly inappropriate, it seems to me, to grade litigation by the number of dollars involved, provided jurisdictional amount is present. It would be extremely dangerous to classify litigation as a field of ethics, as deeply solicitous as may be both bench and bar for such high-minded practitioners as will conserve all of the channels of justice.

It must be assumed that the state chancellor, the state judge, will be as quick for the conservation of a fund as is any other chancellor in any other jurisdiction.

It must also be assumed that, though there has been no effort to try the state court suit, it merely awaits the fund. Likewise, we must grant that, though bondholders of the same series as the plaintiff have become claimants in bankruptcy, they may be required to come into the class suit.

The matter must be ruled upon the broad basis that has been pleaded through the years for the saving of the courts of the two jurisdictions from unseemly conflict and clash. It is too late now to marshal cases that point this desirable end. Time and time

again this court has written, perhaps unpardonably fully, of this necessity. A court which first gets jurisdiction, either by actual or potential possession of the res, even though it be merely for the foreclosure of a lien, will proceed, if it does so with appropriate speed, to the consummation. As pointed out by the Supreme Court in a very interesting case, there may be some cases which, glimpsing the necessity for a constitutional bankruptcy efficacy, have overstepped, somewhat, this comity (Straton v. New, 283 U. S. 331, 51 S. Ct. 465, 75 L. Ed. 1060), still the rule is and must be firmly established and cannot be ignored.

My opinion is that the referee entered his order to restrain and turn over improvidently, and that such action should be reversed, and an order will be drawn accordingly.

### On Application for Rehearing.

On March 8, 1933, this court rendered a written memorandum deciding questions raised on a certificate to review certain rulings of the referee in the above cause. The expressions of opinion in that memorandum were subsequently concreted in an order reversing and disapproving the referee's action.

On March 20 attorneys appeared, together with the attorney for the trustee, representing hundreds of thousands of dollars in bond holdings of series A bonds, and asked permission to file a motion for a rehearing. Such permission was granted as a matter of course. The motion was thereupon filed, and notice was given to all parties who might be interested, and on March 23d, the application for a rehearing was argued at length.

As I stated in the opinion of March 8, it is a case that is gravely important. When there is a case in a state court and a case in a national court directed at the same property, the utmost care should be taken to avoid an unseemly conflict. Comity, and that respect for those operating in different spheres, sober the actors into tender circumspection. Whisperings and threats of contempt proceedings are not the weapons of chivalry or carefulness. Judge Shelby, in speaking for the court in a delicate conflict, complimented attorneys who agreed among themselves that there should be no sort of proceedings taken by either until the courts had definitely and finally determined the questions. Hooks v. Aldridge (C. C. A.) 145 F. 865, 871.

With this tenderness and solicitude in mind, which is commended to counsel in this cause, the court has scrutinized anew the paragraphs in its opinion of March 8 which are attacked, at least, inferentially, by those who are now pressing for a rehearing, and for an affirmance of the action of the referee.

In that opinion I was convinced that plaintiff Brown in the state court suit must be given the benefit of his right to be considered as endeavoring to foreclose a lien which had its birth more than four months prior to bankruptcy. As stated in that opinion, this court has the legal right to scrutinize the state court proceedings to determine that very thing. My attention has now been called to the fact that the indenture under which Brown claims his right did not give him any lien whatever upon the property which he asked the state court to take into the possession of a receiver. The holders of series A bonds were given no immediate or direct lien. Such holder was given the right to sue and secure a personal judgment. From the pleadings in Brown's suit the state court adjudicated an equitable lien. Not a lien that had theretofore existed but a lien that grew into fullness in the conscience of the chancellor after having heard the facts. It was and is an inchoate lien. In order to preserve and ripen and harvest this equitable lien which the state court found to exist upon the funds and property that were being held by the First National Bank as trustee under that indenture, the state court granted the receivership. In the pleadings out of which grew this equitable assertion there were many allegations of the insolvency of the Investment Securities Company, and the state court in his findings discovered and declared that that company was insolvent. Thereupon the state court under the authority of the provisions of article 2293, R. S. Tex. page 471, volume 7, Vernon's Annotated Civil Statutes, appointed Mr. Rutledge as receiver.

Within five days thereafter bankruptcy proceedings were filed in the national court. The trustee in the latter proceedings and the receiver in the first proceedings have demanded, as stated in my previous opinion, the million dollars in property and cash which is held by the First National Bank in Dallas, for the benefit of the holders of series A bonds.

This inspection of the indenture under which Brown claims his right to foreclose in the state court, and the more critical examination of the allegations of his petition, and the order of the state court shows, unmistakably, that there is no lien upon which Brown may ask a foreclosure. A court may not create that which the parties themselves had re-

fused. There is no proceeding in the state court save a general equitable taking of a fund belonging to an insolvent debtor for distribution among the creditors of such insolvent. This is the business of the bankruptcy court, the creature of the national Constitution and paramount in that field. Straton v. New, 283 U. S. 331, 51 S. Ct. 465, 75 L. Ed. 1060. It is not a conflict of concurrent jurisdiction. Harkin v. Brundage, 276 U. S. 43, 48 S. Ct. 268, 72 L. Ed. 457.

An effort of this sort ceases to be a proceeding for the foreclosure of a lien created outside of the time when the bankruptcy court must interfere. The disposition of the assets of an insolvent, even though charged with equities, must be and is confined to the court which is charged under the national law with just that function. This was made clear in the early case of Hooks v. Aldridge, 145 F. 865, C. C. A., Fifth circuit.

This does away with the becoming hesitancy that arises when one undertakes to point the right road as between two courts exercising concurrent jurisdiction. The administration of insolvent estates is committed to the national court. What is being attempted in the state court is the duty of the national court.

The parties also suggest another line of thought that is not quite so clear, but that doubtless has its virtue. It is that while a potential possession of the res as between courts of concurrent jurisdiction will be as effective as actual possession, that such care disappears with the disappearance of the concurrent feature. When two courts are moving in a field in which each has jurisdiction of the particular case that is before it, but when such cases differ in their complexions and prayers, even though the result of each might be to take the same property, that court which first gets the actual possession of the property involved will hold it, and the potential rule is inapplicable. A case of this sort will be found at page 641 of 232 F., Empire Trust Company v. Brooks, Fifth circuit. In that case the federal court directed its receiver in a foreclosure suit against a corporation to turn over the mortgaged property to the receiver of a state court. But the proceeding in the state court was for the dissolution of a corporation and the distribution of its assets under the same state statute that is here involved, but the court there had made no order appointing a receiver and had taken neither actual nor constructive possession, while in the federal court suit which was instituted later, the receiver had in fact taken possession of the property. The Circuit Court of Appeals reversed the court ordering the turnover. The distinction is nice and may explain the confusion that has arisen over the careless use of the words "constructive and potential." Those two words are applicable when both courts are operating upon the same property, with the same desire, and to the same end, when neither court is superior to the other. But when the distribution of insolvent estates is committed to a given tribunal in our acknowledged system of government, that court supersedes all others if and when it is set in operation within the times fixed by the statute.

I would not like to add as a controlling feature, as persuasive as it may be to the thoughtful chancellor, that one's ears should be wide open to hear the appeals of those who are deeply and directly interested, such as the bondholders are in this particular case. It is their property that is at stake, and they demand and desire that the funds shall be administered in the national court. At argument it was asserted that the state court receiver had gotten an order requiring all series A bondholders to intervene in that court on or before May 1, 1933, or to be forever barred from participating in the fund that it was hoped would be assembled there. It was stated that since that order interveners representing two or three hundred thousand dollars in bonds had filed interventions using blank forms so sent out by the receiver. The parties who are in that court must be seen as they were at the time of the institution of the bankruptcy proceeding.

Pending a decision by the higher court upon this matter, I take the liberty of counselling the serious thought by all sides in the effort to allow that orderly procedure to be followed which is, and always shall be, a compliment to the bar and the crowning glory of our court system.

An order may be prepared setting aside the order that was granted heretofore by this court overruling and reversing the action of the referee, affirming his order and restraining the receiver from interfering with the possession of the property involved, which is in the hands of the First National Bank in Dallas, which asserts no adverse claim. That institution will also be directed to turn over the property involved, to the trustee, if and when the trustee thinks it to be to the best interest of the bankruptcy estate to take the same. Such exceptions may be preserved in the order as the parties wish.